**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

———————

No.  97-2198

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of |
| | * | Minnesota. |
| Nam Xuan Ngo, | * | |
| | * | |
| Defendant-Appellant. | * | |
| | * | |

———————

Submitted: December 12, 1997
Filed: December 30, 1997

———————

Before MURPHY, JOHN R. GIBSON, and MAGILL, Circuit Judges.

———————

MURPHY, Circuit Judge.

Nam Xuan Ngo was indicted on twenty-four counts of possessing counterfeit securities in violation of 18 U.S.C. § 513, nine counts of money laundering in violation of 18 U.S.C. § 1956(a)(1), and one count of conspiracy to commit these offenses in violation of 18 U.S.C. § 371.  Ngo pled guilty to one count of possession and the district court[1] sentenced him to thirty months in prison and two years of supervised

———————

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

release.  Ngo now appeals the district court's denial of a sentencing reduction for acceptance of responsibility and the imposition of an enhancement for a leadership role in the criminal activity.  We affirm.

On June 14, 1995, Ngo, Hao Huy Le, and Sang Minh Tu were arrested in Edina, Minnesota after police stopped their car because a passenger matched the description of a man who had just attempted to pass a counterfeit check at First Bank Edina.  Police found twelve $100 bills in Ngo's pants pocket and seventeen more in a slit in his shirt cuff.  On the adjacent sidewalk they found fifteen checks wrapped in a piece of paper; the checks had the same payee, amount, and issuer as the check presented to First Bank Edina.  They also found a brochure in the car which listed hours and locations of Minneapolis area First Bank branches and which had a signature on it in the name of one of the payees of the counterfeit checks.  Ngo's fingerprints were found on several of the checks and the brochure.

Ngo pled guilty to one count of possession of a counterfeit security as part of a plea agreement which also provided for dismissal of the other thirty three counts with which Ngo was charged.  During his change of plea hearing Ngo admitted his involvement in the criminal offense and said that he had joined Le and Tu on June 14 after calling them on his cellular phone and learning that they were negotiating counterfeit checks with Cuong Nguyen and had already that day passed checks at three First Bank facilities.  Ngo claimed that he asked to join them so he could get some money but that he told Tu he would only serve as a lookout.  Nguyen left the group when Ngo arrived and Ngo, Le, and Tu then went on to First Bank Southdale where they negotiated a check for $2900 before proceeding to First Bank Edina.  In the course of two days, members of the group presented counterfeit checks with a total value of $72,300.

The prosecution requested an evidentiary hearing and sought enhancements for obstruction of justice and a leadership role in the offense, but the government withdrew the request for a leadership enhancement on the day of sentencing because Le, Tu, and Nguyen refused to testify against Ngo. The court adopted the undisputed factual statements in the presentence report and received transcripts of several phone conversations Ngo had from jail with Tu and Le and a stipulation that Ngo had been charged with driving while intoxicated after his guilty plea. Ngo objected to several aspects of the presentence report, including statements that the four men where members of a gang known as the "Minneapolis Boys," that Ngo had taken over the check counterfeiting scheme from his brother and was operating it from his house, that he had previously recruited Nguyen and another man to participate and provided them with checks and false identification, and that Le, Tu, and Nguyen had said that Ngo was the leader of the operation. The court stated that it would not consider the challenged statements in the report in making its sentencing determinations. After hearing arguments from counsel and statements by Ngo and his father, the court imposed a sentence of thirty months in prison and two years of supervised release. In applying the United States Sentencing Guidelines the court declined to adjust downward for acceptance of responsibility under U.S.S.G. § 3E1.1, imposed a two level enhancement for Ngo's leadership role in the operation under U.S.S.G. § 3B1.1, and refused to add an enhancement for obstruction of justice under U.S.S.G. § 3C1.1.

Ngo claims that the district court erred in denying him a two level reduction for acceptance of responsibility. Ngo had the burden to establish a clear acceptance of responsibility, U.S. v. Byrd, 76 F.3d 194, 196 (8th Cir. 1996), and the district court's factual determination is entitled to great deference. Id; U.S.S.G. § 3E1.1 n. 5. Such a determination should only be reversed if it is so clearly erroneous as to be without foundation. Byrd, 76 F.3d at 195.

The district court found Ngo's story a conscious attempt to mislead and to minimize his involvement and that it was thus inconsistent with acceptance of

responsibility.  U.S.S.G. § 3E1.1 n. 1(a).  Ngo told the court that he participated in the scheme for fun and to make some money, but that he only held money because of someone else's instructions.  Ngo's fingerprints were found on several checks and on the brochure listing the location and hours of First Bank facilities where checks had been passed, however, and police found $2900 in cash hidden on his person.  The district court was also entitled to consider his subsequent driving conduct because continued criminal conduct, even if minor and unrelated to the offense of conviction, can make a sentence reduction for acceptance of responsibility inappropriate.  Byrd, 76 F.3d at 197.  The district court had the opportunity to observe Ngo's demeanor and evaluate his credibility at the time he entered his guilty plea and again at the sentencing hearing. Its finding that Ngo was not entitled to credit for acceptance of responsibility was not clearly erroneous.

Ngo also contests the imposition of a two level enhancement for his leadership role, and this factual determination also can only be reversed if clearly erroneous.  United States v. Edwards, 91 F.3d 1101, 1104 (8th Cir. 1996).   An enhancement for a leadership role in the criminal enterprise must be based on control of other participants in the offense. U.S.S.G. § 3B1.1 n. 2.  The sentencing guidelines support several factors that may be considered: decision making authority, planning or organizing, control or authority over others, recruiting others, and the nature of participation.  U.S.S.G. § 3B1.1 n. 4.

The district court found that transcripts of Ngo's phone conversations from jail with Le and Tu showed his leadership role in the check counterfeiting scheme.  During these conversations, Ngo repeatedly instructed Tu and Le on how to tell their stories to the police and court. He informed them that his sentence would turn on their testimony and directed them how to testify in order to minimize his involvement.  He also made several statements about killing an individual who had not done what he wanted, and he threatened prosecution witnesses if he ever got out of jail.  Both Le and Tu appeared deferential to Ngo and his instructions. These recorded conversations

-4-

support the finding that Ngo directed the counterfeiting enterprise because they show planning, organization, and his position as the dominant member.

There was also other evidence to support the district court's finding about Ngo's role in the offense. The checks and proceeds were tied directly to him, as was the information on the targeted banks. His fingerprints were found on several checks and on the brochure showing the location and hours of the banks where checks were passed. He took charge of the proceeds and hid some in his shirt cuff. He did not personally enter the bank, but kept a lookout while Tu and Le attempted to negotiate the checks. The record supports the court's finding that he directed the other participants at the time of the offense and continued in that role after the men were arrested and charged.

Since Ngo has not shown that the district court's sentencing determinations were clearly erroneous, the judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.