# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3579

_____

United States of America,                    *
                                             *
            Appellee,                        *
                                             *  Appeals from the United States
      v.                                     *  District Court for the
                                             *  District of Minnesota.
Esequicio Londondio,                         *
                                             *
            Appellant.                       *


_____

No. 04-3580

_____

United States of America,                    *
                                             *
            Appellee,                        *
                                             *
      v.                                     *
                                             *
Carlos Alberto Gonzalez-Rodriguez,           *
                                             *
            Appellant.                       *

_____

No. 04-3582
_____

United States of America,       *
                                    *

       Appellee,           *
                                    *

    v.                        *
                                    *

Pablo Jaramillo,           *
                                    *

       Appellant.       *


_____

No. 04-3584
_____

United States of America,       *
                                    *

       Appellee,           *
                                    *

    v.                        *
                                    *

Juan Fernando Palacio,     *
                                    *

       Appellant.       *

_____

No. 04-3585

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Nahum Alcantora, | * |
| | * |
| Appellant. | * |

_____

Submitted: June 20, 2005
Filed: August 24, 2005

_____

Before RILEY, BOWMAN, and BENTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

This case arises from a cocaine transaction that occurred in the Minneapolis area in early November 2003. As a result of the transaction, six men were indicted for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (2000), and aiding and abetting possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (2000). Prior to trial, two of the men, Nicholas Castillo and Esequicio Londondio, pleaded guilty to the conspiracy charge in exchange for the government's agreement to dismiss the aiding and abetting charge. The remaining four men, Carlos Gonzalez-Rodriguez, Nahum Alcantora, Pablo Jaramillo, and Juan Palacio, were convicted of both charges at trial. Gonzalez-Rodriguez, Alcantora, Jaramillo, and Palacio appeal their convictions. Alcantora, Palacio, and Londondio

appeal their sentences. For the reasons discussed below, we affirm the judgment of the District Court[1] in its entirety.

## I.

On November 5, 2003, Castillo contacted Brian Zelaya, not knowing that Zelaya was a police informant, and told Zelaya that a large shipment of cocaine had arrived in Minnesota and that he could introduce Zelaya to the cocaine's source. At the direction of the police, Zelaya arranged to meet Castillo that evening at B.J.'s Bar in Minneapolis. When Castillo arrived, he was accompanied by his roommate, Londondio. The three entered a van and therein made the initial arrangements for a cocaine sale to Zelaya.

The next day, Londondio called Zelaya, and the two agreed to meet on the morning of November 7, 2003, at a Rainbow Foods store in Columbia Heights, Minnesota, to further plan the drug exchange. At the meeting, Zelaya agreed to purchase one to two kilograms of cocaine for $28,000 per kilogram. They arranged for the delivery of the cocaine to take place the same day at an apartment in Bloomington, Minnesota. Zelaya gave Londondio hand-written directions to the apartment, which was an undercover apartment maintained by police. After the meeting, police followed Londondio as he walked to his residence a few blocks away.

A short time later, Londondio emerged from the residence with Gonzalez-Rodriguez. The two left in a Jeep Cherokee driven by Gonzalez-Rodriguez and proceeded to a Burger King restaurant near 34th Street and Nicollet Avenue in Minneapolis. Waiting in the Burger King parking lot was Palacio, who was driving a Chrysler LeBaron. Londondio, Gonzalez-Rodriguez, and Palacio spoke for a short

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

time outside the vehicles. Then, Gonzalez-Rodriguez and Palacio walked to a nearby location to look at vehicles that Palacio's boss was selling. They then returned to the Burger King, entered their respective vehicles, and drove to the vicinity of 43rd Street and Bloomington Avenue in Minneapolis. When they arrived, Palacio parked the LeBaron behind a Ford F-150 pickup truck occupied by Jaramillo. Londondio and Gonzalez-Rodriguez left the area, but returned in one or two minutes and parked the Jeep near the other two vehicles. Soon, Alcantora, carrying a white plastic bag, exited a dwelling near the vehicles. He spoke with Palacio at the driver's side window of the LeBaron and then placed the bag in the trunk of the LeBaron. Alcantora then entered the F-150 with Jaramillo.

The three vehicles traveled in caravan fashion to the parking lot of the undercover apartment in Bloomington. While en route, Londondio used Gonzalez-Rodriguez's cellular phone to call Zelaya. Londondio told Zelaya that he and another person were on their way to the apartment with the cocaine and asked about the purchase money. Because officers knew that Londondio's representation that he was with one other person was false, they suspected that Zelaya was possibly being set up for a robbery. To protect Zelaya and the public, officers decided to make immediate arrests when the vehicles arrived in the parking lot. Thus, when the vehicles entered the parking lot, officers emerged from unmarked vehicles wearing raid vests and with firearms drawn. All three vehicles attempted to leave the scene. Palacio fled the furthest in the LeBaron; he was stopped by officers approximately two blocks from the parking lot. Alcantora and Jaramillo in the F-150 were able to go only a few feet before being stopped. Londondio and Gonzalez-Rodriguez were stopped after an officer stepped in front of the Jeep and a truck driven by a deputy sheriff blocked it from behind. The five men in the vehicles were arrested. A white plastic bag containing a kilogram of cocaine was removed from the trunk of the LeBaron and the directions to the apartment given to Londondio were recovered from the floor of the Jeep.

## II.

We begin our review by addressing the challenges raised by Jaramillo, Gonzalez-Rodriguez, Alcantora, and Palacio to their convictions.

## A.

Jaramillo asserts that the District Court erred in failing to suppress a statement that he made while in police custody and before being advised of his Miranda rights. After their arrests, the five appellants were transported to the Drug Enforcement Agency (DEA) office for booking. Because he spoke English, Jaramillo was asked by DEA Officer Randall Olson to assist in the bookings of the other four non-English-speaking arrestees. Jaramillo agreed. In the course of the booking process, Jaramillo stated that he had been promised $500.00 in exchange for his role in the cocaine transaction. At the time of the statement, Jaramillo had been in custody for approximately three hours but had not been advised of his Miranda rights. The District Court denied a pre-trial motion by Jaramillo to suppress the statement, and Olson testified about the statement at trial. Jaramillo asserts that the admission of the statement violates his Fifth Amendment rights.

"When considering an order denying a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Briones, 390 F.3d 610, 612 (8th Cir. 2004), cert. denied, 125 S. Ct. 2925 (2005). The requirements of Miranda arise only when a defendant is both in custody and being interrogated. United States v. Head, 407 F.3d 925, 928 (8th Cir. 2005). Because it is undisputed that Jaramillo was in custody and had not yet been advised of his rights, the issue is whether his statement resulted from interrogation. See Briones, 390 F.3d at 612. Interrogation includes both direct questioning by officers and words or actions that officers should know are "'reasonably likely to elicit an incriminating response from the suspect.'" Id. (quoting Rhode Island v. Innis, 446

-6-

U.S. 291, 301 (1980)). Voluntary statements that are not in response to interrogation are admissible with or without the giving of Miranda warnings. Head, 407 F.3d at 928.

Jaramillo argues that asking him to assist in the bookings of the other suspects was a police strategy designed to elicit an involuntary and incriminating statement, particularly given the "inherently coercive" environment of custody. Jaramillo Br. at 11. We disagree. The record indicates that the only question that had been asked of Jaramillo prior to his statement was whether he was willing to assist in the bookings of his co-defendants. Then, during the course of the bookings and not in response to any question, Jaramillo mentioned the $500.00 payment. Nothing in the record indicates that Olson anticipated that his request for assistance would cause Jaramillo to make an incriminating remark. See United States v. Mendoza-Gonzalez, 363 F.3d 788, 795 (8th Cir. 2004) (holding that officer could not have reasonably expected suspect to make an incriminating statement in response to officer's question asking why suspect wanted to make a telephone call). Further, nothing in the record indicates that Olson intended to circumvent Miranda by obtaining Jaramillo's assistance in booking. Cf. Missouri v. Seibert, 124 S. Ct. 2601, 2612, 2616 (2004) (holding that Missouri's two-step process of interrogation—whereby interrogation was used to obtain a confession prior to the giving of Miranda warnings, after which Miranda warnings were given and a confession again obtained—was a deliberate strategy to undermine Miranda in violation of the Fifth Amendment). We conclude that Jaramillo's statement was not the product of either express questioning or coercive action, and it therefore was properly admitted.

B.

Gonzalez-Rodriguez asserts that the District Court erred in admitting evidence of an out-of-court statement by Castillo implicating Gonzalez-Rodriguez as the source of the cocaine. We review the District Court's evidentiary rulings for abuse

of discretion. United States v. Roach, 164 F.3d 403, 408 (8th Cir. 1998), cert. denied, 528 U.S. 845 (1999). We will reverse only "if an error substantially prejudiced the outcome." Id.

Castillo was not present when the cocaine transaction was carried out on November 7, 2003, but he was arrested approximately five days later at his residence. After he was taken into custody, Castillo voluntarily stated to Olson that the cocaine involved in the transaction was supplied to Londondio by Gonzalez-Rodriguez. At trial, over the objection of Gonzalez-Rodriguez's counsel, the District Court permitted Olson to recount Castillo's statement. In addition, after Castillo directly testified that Gonzalez-Rodriguez was the supplier of the cocaine, the District Court permitted Castillo to further testify that his statement to Olson on the day of his arrest was "exactly the same" as his direct testimony. Trial Tr. at 375. Gonzalez-Rodriguez argues that the evidence of Castillo's out-of-court statement implicating Gonzalez-Rodriguez was hearsay that the District Court should have excluded.

The government asserts that Castillo's out-of-court statement was not hearsay because it was a prior consistent statement pursuant to Federal Rule of Evidence 801(d)(1)(B). Rule 801(d)(1)(B) provides that a statement is not hearsay if it is consistent with the declarant's trial testimony and is offered to rebut an express or implied charge of recent fabrication. A witness other than the declarant is permitted to testify about the statement. Roach, 164 F.3d at 411. The statement, however, must have been "made before the charged recent fabrication or improper influence or motive." Tome v. United States, 513 U.S. 150, 167 (1995).

We agree that Castillo's statement was admissible pursuant to Rule 801(d)(1)(B). Counsel for Gonzalez-Rodriguez and Palacio attempted to impeach Castillo at trial by questioning him about two plea agreements to which he was a party – one in this case and one in a 2003 case in which Castillo had pleaded guilty

-8-

to the distribution of cocaine but had not yet been sentenced.[2] Counsel suggested that Castillo's desire to reduce his sentences in the two cases (by assisting the government) gave Castillo a motive to lie on the witness stand about Gonzalez-Rodriguez's role as the source of the cocaine. To rebut the implied charge that Castillo fabricated testimony to receive a more favorable sentence in this case, Rule 801(d)(1)(B) permitted the government to introduce Castillo's prior out-of-court statement to Olson. See United States v. Hill, 91 F.3d 1064, 1071 (8th Cir. 1996). The statement, which was consistent with Castillo's trial testimony, predated Castillo's plea agreement in this case (the charged motive). While Gonzalez-Rodriguez correctly asserts that the statement to Olson postdated Castillo's plea agreement in the 2003 case—making it inadmissable under Tome to rebut a charge that Castillo was motivated to lie by that plea agreement[3]—the statement nonetheless was properly admitted to rebut the alleged motive to lie created by Castillo's plea agreement in this case. The District Court did not abuse its discretion when it admitted the evidence of Castillo's out-of-court statement to Olson.

---

[2]Counsel for Gonzalez-Rodriguez also raised the issue of Castillo's credibility in his opening statement to the jury, stating, "I'm going to ask you to assess whether [Castillo] has a motive to lie." Opening Statements Tr. at 57.

[3]We note that it is highly improbable that a motive to lie could be found to arise from the plea agreement in the 2003 case. That agreement limited Castillo's obligation to providing the government substantial assistance "in the prosecution of drug traffickers with whom the defendant has had *past* dealings or knowledge." Gonzalez-Rodriguez Br. at A12 (Plea Agreement and Sentencing Stipulations in United States v. Escobar-Vargas). There is no indication in the record that Castillo had dealings with or knowledge of Gonzalez-Rodriguez when he signed that agreement in April 2003—nineteen months prior to his dealings with Gonzalez-Rodriguez in this case.

## C.

In a related matter, Gonzalez-Rodriguez asserts that the District Court erred in not requiring the United States Department of Justice (DOJ) to turn over exculpatory and impeaching material regarding any agreements or understandings that the government offered to Castillo in the 2003 case. At a motions hearing in the District Court, Gonzalez-Rodriguez's attorney argued that because the United States Attorney's Office for the District of Minnesota (U.S. Attorney's Office) had recused itself from the 2003 case and the prosecution of that case was pursued by the DOJ, the DOJ (not the U.S. Attorney's Office) should be required to disclose any Brady[4] or Giglio[5] material related to Castillo. Thereafter, the District Court issued an order requiring "the government, including the Department of Justice" to produce all information regarding Castillo pursuant to Brady and Giglio "FORTHWITH." Order, March 24, 2004. Although the U.S. Attorney's Office produced copies of Castillo's plea agreement, inducements, criminal history, and proffer statements in the 2003 case, Gonzalez-Rodriguez asserts that the DOJ did nothing in response to the District Court's order. We find no indication in the record, however, that the DOJ's failure to comply was ever brought to the attention of the District Court. Because Gonzalez-Rodriguez did not petition the District Court for enforcement of its order, Gonzalez-Rodriguez has failed to preserve this matter for appellate review, and we find no plain error that would entitle Gonzalez-Rodriguez to relief. See Becker v. Univ. of Neb. at Omaha, 191 F.3d 904, 909 n.4 (8th Cir. 1999) ("A party may not stand idly by, watching the proceedings and allowing the district court to commit error of which the party subsequently complains.") (internal quotation, alterations, and citation omitted); United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) ("Errors not properly preserved are reviewed only for plain error . . . .").

---

[4]Brady v. Maryland, 373 U.S. 83 (1963).

[5]Giglio v. United States, 405 U.S. 150 (1972).

D.

Palacio and Alcantora assert that the evidence presented at trial was insufficient to support their convictions. Since they did not move for acquittal at the close of all the evidence, we review the sufficiency of the evidence for plain error. United States v. Wadena, 152 F.3d 831, 853 (8th Cir. 1998), cert. denied, 526 U.S. 1050 (1999). In order to prevail under the plain error standard, a defendant must prove (1) there is error, (2) that is plain, (3) that affects a substantial right, and (4) that seriously affects the integrity or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732–36 (1993). We will find error only if, when viewing the evidence in the light most favorable to the government, no reasonable fact-finder could have found the defendants guilty beyond a reasonable doubt. United States v. Brown, 346 F.3d 808, 813 (8th Cir. 2003); United States v. Chapman, 356 F.3d 843, 847 (8th Cir. 2004).

Palacio and Alcantora argue that the government failed to establish that they knowingly possessed cocaine (an essential element of the aiding and abetting charge), knew of the conspiracy (an essential element of the conspiracy charge), and knowingly participated in the conspiracy (an essential element of the conspiracy charge). To prove knowledge, prosecutors often use circumstantial evidence because direct evidence of such scienter is seldom available. United States v. Thropay, 394 F.3d 1004, 1006 (8th Cir.), cert. denied, 125 S. Ct. 2283 (2005). Knowledge of cocaine possession may be established by proof of constructive possession, including evidence that a person has dominion or control over the cocaine or a vehicle carrying the cocaine. United States v. Cortez, 935 F.2d 135, 143 (8th Cir. 1991), cert. denied, 502 U.S. 1062 (1992). Knowledge of a conspiracy and knowing participation in the same may be established by presenting "only slight evidence" showing that a defendant tacitly agreed to participate in the conspiracy. United States v. Causor-Serrato, 234 F.3d 384, 388 (8th Cir. 2000), cert. denied, 532 U.S. 1072 (2001). A defendant need not know all the details of the conspiracy to be a participant. Id.

-11-

We have reviewed the record and conclude that the evidence was clearly sufficient to establish Palacio's and Alcantora's knowledge of and knowing participation in the drug transaction, thus establishing the knowledge elements of both charges. Most significant was the testimony of a surveillance officer that he observed Alcantora place a bag of drugs in the trunk of Palacio's LeBaron. The government also presented evidence that Palacio and Alcantora drove in a caravan with co-defendants to the undercover apartment in Bloomington, whereupon officers recovered the bag of drugs from the trunk of the LeBaron. While Palacio and Alcantora each presented other plausible, legitimate reasons for their presence in the caravan and at the apartment, "we will sustain the verdict if there is *any* interpretation of the evidence that could lead a reasonable-minded jury to find the defendant[s] guilty beyond a reasonable doubt." United States v. Selwyn, 398 F.3d 1064, 1066 (8th Cir. 2005) (emphasis added). Because the record supports a finding that Palacio and Alcantora are guilty, the District Court committed no error, much less plain error, in failing to *sua sponte* direct a judgment of acquittal at the close of all the evidence. Finding no error, we do not reach the remaining three Olano factors.

E.

Alcantora argues that prosecutorial misconduct prejudiced his right to a fair trial. Alcantora's defense theory was that he was an innocent bystander to the transaction. He testified that he was at 43rd Street and Bloomington Avenue on the date of the arrests to meet Jaramillo so that he could pay Jaramillo $500.00 for previous construction work and so that the two could drive together to look at a new construction project. According to Alcantora, on the way to view the new project, Jaramillo directed him to make a brief stop at an apartment complex near the Mall of America. To Alcantora's surprise, police were waiting in the parking lot of the complex and an officer ordered him out of the F-150. Alcantora testified that the officer took $600.00 from his shirt pocket, $500.00 of which he had intended to give

-12-

to Jaramillo. Alcantora contends that the prosecutor acted inappropriately in two instances at trial when commenting about the $500.00.

Alcantora concedes that he did not raise this argument in the District Court, and we therefore review for plain error. United States v. Fletcher, 322 F.3d 508, 516 (8th Cir. 2003). To prove prosecutorial misconduct, a defendant must demonstrate (1) that the prosecutor's comments were improper, and (2) that the comments prejudicially affected the defendant's substantial rights such that he was denied a fair trial. United States v. Ziesman, 409 F.3d 941, 953 (8th Cir. 2005). "If we reach the second step, we consider '(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any curative actions taken by the trial court.'" Id. (quoting United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000)).

Alcantora first asserts that the prosecutor improperly compelled him to testify that an officer stole the $500.00. We find nothing improper about the prosecutor's questioning. By questioning Alcantora about the absence of any record showing that he possessed $600.00 at the time of his arrest, the prosecutor stayed within the scope of Alcantora's direct testimony. See United States v. Martin, 866 F.2d 972, 978 (8th Cir. 1989). It was reasonable for the prosecutor to clarify the meaning of Alcantora's testimony that an officer "took" the money. Trial Tr. at 725.

Alcantora next asserts that the prosecutor acted improperly by remarking in her closing rebuttal argument that Alcantora and his counsel fabricated the issue of the stolen money for trial. The prosecutor stated:

$500 stolen by officer. First time in trial. [Alcantora's counsel] is a lawyer. He's never made any kind of complaint about missing money. Fabrication for trial.

-13-

Closing Arguments Tr. at 63. This statement impugned defense counsel's reputation by misconstruing the clear facts in the record. Alcantora's counsel raised the issue of the failure by the police to document the alleged seizure of the $600.00 not for the first time at trial but at a pre-trial hearing before the District Court (at which the prosecutor was present). We therefore agree that the prosecutor's rebuttal comments may have crossed the line from effective advocacy to improper advocacy. See United States v. Young, 470 U.S. 1, 9 (1985) (admonishing that counsel "must not be permitted to make unfounded and inflammatory attacks on the opposing advocate"); United States v. Holmes, 413 F.3d 770, 775 (8th Cir. 2005) (ruling that a prosecutor's rebuttal statements accusing defense counsel of conspiring with the defendant to fabricate testimony were "highly improper because they improperly encourage the jury to focus on the conduct and role of [the defendant's] attorney rather than on the evidence of [the defendant's] guilt").

Alcantora has not established, however, that he was prejudiced by the statement. The cumulative effect of the prosecutor's misconduct was minimal. First, it included only a single mention of fabrication in the middle of a longer rebuttal argument that focused on a number of pieces of evidence. Second, the jury heard evidence contradicting the allegation that Alcantora's theory of the seized money was newly created for trial. Alcantora testified during both cross-examination and redirect examination that his attorney complained of the missing money at a hearing approximately two months before trial. Further, in closing argument, Alcantora's counsel addressed the government's suggestion that the missing money was a "new story," noting that the issue was "brought out earlier at a previous hearing." Closing Arguments Tr. at 51. We also believe that the incriminating evidence admitted against Alcantora, discussed above, was convincing and that Alcantora would have been convicted regardless of the prosecutor's misconduct. Finally, we note that, while the District Court did not take *sua sponte* curative action immediately after the prosecutor's improper comments, it did give the jury the written instruction that "[q]uestions, objections, statements, and arguments of counsel are not evidence in the

-14-

case." Jury Instruction No. 2. As in <u>Young</u>, when viewed in the context of the trial as a whole, "the prosecutor's statements, although inappropriate and amounting to error, were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." 470 U.S. at 16. We find no plain error.

## F.

Finally, Gonzalez-Rodriguez and Palacio assert that the District Court made a number of evidentiary errors, including (1) admitting hearsay evidence by permitting police officers to testify about events of which the officers did not have first-hand knowledge, including statements by other officers heard over police radios during surveillance, (2) permitting the prosecutor to ask leading questions on direct examination and to repeat witness testimony, and (3) permitting an officer to testify as an expert witness without the notice required by Rule 16 of the Federal Rules of Criminal Procedure. As noted above, we review the District Court's evidentiary rulings for abuse of discretion, and we will not reverse an evidentiary error that was harmless.[6] <u>United States v. Walker</u>, 393 F.3d 842, 848 (8th Cir. 2005). "An evidentiary error is harmless if the substantial rights of the defendant were unaffected and the error did not influence or had only a slight influence on the verdict." <u>United States v. Wipf</u>, 397 F.3d 677, 682 (8th Cir. 2005).

We have carefully studied the transcript of the trial and find no evidentiary error warranting reversal. We conclude that most of the District Court's rulings were correct. For example, the District Court permitted testimony about out-of-court statements that were offered to show the reason for police action, rather than to prove the truth of the matter asserted. These statements were not hearsay. <u>United States v. Bowling</u>, 239 F.3d 973, 977 (8th Cir. 2001); <u>Garrett v. United States</u>, 78 F.3d 1296, 1306 (8th Cir.), <u>cert. denied</u>, 519 U.S. 956 (1996). Likewise, the District Court

---

[6]Defense counsel objected at trial to the evidentiary decisions discussed herein.

permitted the prosecutor to ask leading questions when eliciting information on preliminary matters. Leading questions used for this purpose generally are not proscribed by Rule 611(c) of the Federal Rules of Evidence. See Fed. R. Evid. 611 advisory committee's note.

Where we think there may have been error, it was harmless. For instance, hearsay testimony that the District Court admitted generally recapped the testimony of officers who actually witnessed the events and made the statements at issue. The admission of hearsay evidence that is cumulative of earlier trial testimony by the declarant or cumulative of other hearsay evidence to which no objection was made is not likely to influence the jury and is therefore harmless error. Wipf, 397 F.3d at 682; United States v. Gabe, 237 F.3d 954, 958–59 (8th Cir. 2001); United States v. Melecio-Rodriguez, 231 F.3d 1091, 1094 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001). We reject Gonzalez-Rodriguez's and Palacio's assertions that the cumulative effect of the District Court's erroneous rulings prejudiced the defendants such that the errors were not harmless. As the errors individually had no effect on the outcome of this case, aggregating them changes little. The defendants were not denied a fair trial or due process.

III.

We now turn to the challenges raised by Londondio, Palacio, and Alcantora to their sentences.

The District Court applied the then mandatory federal sentencing guidelines scheme in arriving at sentencing ranges for the defendants. We review the District Court's factual findings for clear error, and its application and construction of the guidelines de novo. United States v. Harvey, 413 F.3d 850, 852 (8th Cir. 2005).

-16-

## A.

Londondio challenges the District Court's denial of a three-level reduction for acceptance of responsibility pursuant to United States Sentencing Guidelines Manual § 3E1.1 (2003). Whether a defendant has accepted responsibility is a factual question particularly suited for the sentencing court, and we therefore accord the District Court's determination great deference. United States v. Arellano, 291 F.3d 1032, 1034 (8th Cir. 2002).

Londondio pleaded guilty to Count 1 of the indictment, conspiracy to distribute and possess with intent to distribute more than 500 grams of cocaine. At the plea hearing, he admitted his involvement in the offense, indicated that he was aware that his conduct was illegal, and expressed remorse for his actions. During a subsequent interview with the probation officer preparing the presentence investigation report (PSIR), however, Londondio falsely asserted that he had not previously been involved in the sale of drugs and had no prior convictions. The probation officer later learned that Londondio had been convicted of possession with intent to distribute cocaine two years earlier under a different name. Based upon Londondio's misrepresentations, the probation officer recommended no reduction to Londondio's sentence for acceptance of responsibility and a two-level enhancement to Londondio's sentence for obstruction of justice. At sentencing, the District Court granted neither a reduction for acceptance of responsibility nor an enhancement for obstruction of justice.

Londondio contends that his candid admissions regarding the instant offense should have earned him an acceptance of responsibility reduction despite his lie to the probation officer. We conclude that the District Court did not clearly err by finding that Londondio failed to fully accept responsibility. Londondio's misrepresentation

-17-

to the probation officer about his criminal record was inconsistent with acceptance of responsibility. See United States v. Bell, 411 F.3d 960, 964 (8th Cir. 2005). His criminal history was clearly relevant to the District Court's determination of the appropriate sentence in this case. The District Court was entitled to consider Londondio's statements to the probation officer in determining whether Londondio had clearly accepted responsibility, and we cannot say that the District Court clearly erred in its finding.[7]

B.

Palacio and Alcantora assert that the District Court erred in denying each a mitigating role reduction pursuant to United States Sentencing Guidelines Manual § 3B1.2 (2003). Section 3B1.2 permits a sentencing court to decrease the offense level of a defendant who is substantially less culpable than most other participants in a concerted criminal activity. U.S. Sent. Guidelines Manual § 3B1.2, cmt. n.3(A), n.4 & n.5 (2003). Although a defendant may be eligible for the § 3B1.2 reduction "if his culpability for the relevant conduct is relatively minor compared to that of other participants, . . . the mere fact that a defendant is less culpable does not entitle him to the reduction." United States v. Johnson, 408 F.3d 535, 538 (8th Cir. 2005). Rather, to determine the appropriateness of a reduction the sentencing court should compare the acts for which the defendant is held accountable to the acts of the other

---

[7]Londondio also argues that the District Court's decision is inconsistent: "If there is no obstruction of justice, then clearly the defendant should be granted a three-level reduction for acceptance of responsibility." Londondio Br. at 13. This argument is without merit. We have affirmed district court decisions denying an acceptance of responsibility adjustment even where there is no obstruction of justice adjustment in any number of cases. See, e.g., United States v. Rivera, 370 F.3d 730, 733, 734–35 (8th Cir. 2004); United States v. Ngo, 132 F.3d 1231, 1233 (8th Cir. 1997).

participants, and measure the defendant's acts and relative culpability against the elements of the offense.  Id. at 538–39.  A sentencing court's determination that a defendant is not entitled to the reduction may be reversed only if clearly erroneous. Id. at 538.

While we recognize that neither Alcantora nor Palacio was the source of the cocaine and that neither was involved in negotiating the exchange, we nonetheless cannot say that the District Court clearly erred in finding them average participants in the offense.  The evidence indicated that Alcantora, alone, exited the Minneapolis residence carrying a bag containing over 900 grams of cocaine.  Alcantora spoke with Palacio and then placed the cocaine in the trunk of the LeBaron in which Palacio was the sole occupant.  With Palacio exercising exclusive control over the drugs, Alcantora and Palacio then joined their co-defendants in a three-vehicle caravan to deliver the cocaine to the prospective buyer.

Although it appears that Alcantora and Palacio may be less culpable than, for example,  Londondio, Castillo, and Gonzalez-Rodriguez, "this alone is not enough to establish [] entitlement to a role reduction."  United States v. Bertling, 370 F.3d 818, 821 (8th Cir. 2004).  Based on the evidence of Alcantora and Palacio's significant involvement in getting the drugs to the undercover apartment, the District Court was not required to find them "substantially less culpable than the average participant."  U.S. Sent. Guidelines Manual § 3B1.2, cmt. n.3(A) (2003); see also United States v. Alverez, 235 F.3d 1086, 1090 (8th Cir. 2000) (upholding district court's denial of mitigating role reduction for transporter of drugs), cert. denied, 532 U.S. 1031 (2001);  United States v. McGrady, 97 F.3d 1042, 1043 (8th Cir. 1996) (same).  We uphold the District Court's denials of the requested § 3B1.2 reductions.

C.

Finally, Palacio argues that the District Court erred by sentencing him under a mandatory guidelines scheme in violation of United States v. Booker, 125 S. Ct. 738 (2005). Booker held that the mandatory nature of the federal sentencing guidelines ran afoul of the Sixth Amendment insofar as a sentencing judge, based on certain facts found by the judge, was required to impose a sentence greater than the sentence that could have been imposed based solely on facts admitted by the defendant or proved to a jury beyond a reasonable doubt. 125 S.Ct. at 749, 756. As a remedy, the Court declared the guidelines in their entirety non-mandatory, but "effectively advisory" in all cases. Id. at 757.

Prior to sentencing, Palacio filed objections to the draft PSIR and argued that Booker's predecessor, Blakely v. Washington, 542 U.S. 296 (2004), prevented enhancements to his sentence based on judge-found facts. The District Court agreed that Blakely prohibited the PSIR-recommended enhancements for obstruction of justice and flight from the crime scene, and it sentenced Palacio to an unenhanced guidelines sentence. Nevertheless, Palacio's Blakely objection in the District Court preserved his claim that the District Court committed Booker error by applying the guidelines as mandatory rather than as advisory. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005); United States v. Henderson, 408 F.3d 1078, 1079 (8th Cir. 2005). Accordingly, we review this argument under the harmless error standard. See United States v. Archuleta, 412 F.3d 1003, 1005 (8th Cir. 2005); United States v. Perez-Ramirez, No. 04-3048, slip op. at 2 (8th Cir. July 20, 2005) ("[A] non-constitutional Booker error is to be disregarded as harmless unless there is grave doubt as to whether the defendant would have received a more favorable sentence under an advisory guidelines system.").

-20-

While the District Court's use of the guidelines as mandatory was erroneous, see Pirani, 406 F.3d at 550, there is nothing in the record that causes us grave doubt as to whether Palacio would have received a more favorable sentence absent the Booker error. First, the District Court stated at sentencing that it would impose the same alternative sentence if the guidelines were deemed invalid: "If the guidelines were not applicable I would also reach the same conclusion with respect to the appropriate sentence in this case." Sent. Tr. at 8. Although the District Court's alternative sentence presumed the guidelines wholly unconstitutional, rather than advisory, the alternative sentence satisfies Booker's requirements. See United States v. Thompson, 403 F.3d 533, 536 (8th Cir. 2005) ("We find that the district court's announcement that it would sentence Thompson to 46 months' imprisonment regardless of whether the Guidelines were mandatory renders any remand futile."). Second, the District Court acknowledged that it had discretion to depart downward pursuant to guidelines § 3B1.2 (the minor-participant reduction discussed above) and § 5K2.0 (a reduction for circumstances not adequately considered by the guidelines) but chose not to depart to a more favorable sentence. See Perez-Ramirez, slip op. at 3 (finding error harmless where the district court "left unused some of its discretion to sentence [defendant] to a more favorable sentence under the mandatory, pre-Booker guidelines"). The Booker error therefore was harmless.

In addition, Palacio's sentence of sixty-three months—a sentence at the low end of the guidelines sentencing range and just three months higher than the statutory minimum—was reasonable in light of the sentencing factors listed in 18 U.S.C. § 3553(a) (2000). See Booker, 125 S. Ct. 765–66 (discussing the reasonableness standard of review).

IV.

We affirm the District Court in all respects.

_____