# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1404

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Northern District of Iowa. |
| | * | |
| Joseph Leroy Kramer, | * | [UNPUBLISHED] |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: December 9, 2008
Filed: January 29, 2009

_____

Before COLLOTON, BRIGHT, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Joseph Leroy Kramer appeals his sentence of 97 months' imprisonment, 8 years' supervised release, and a $100 mandatory special assessment for attempting to manufacture and aiding and abetting the manufacture of more than 5 grams of actual methamphetamine. Kramer argues that the district court[1] erred in denying him a sentence reduction for acceptance of responsibility and that his sentence is unreasonable. However, evidence of Kramer's food stamp fraud serves to offset his

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

acceptance of responsibility and his sentence as determined by the district court is reasonable. We therefore affirm.

## I. BACKGROUND

In December 2006, a one-count indictment charged Kramer with attempting to manufacture more than 50 grams of methamphetamine within 1,000 feet of a playground. On June 4, 2007, Kramer pleaded guilty to a lesser-included offense of attempting to manufacture and aiding and abetting the manufacture of more than 5 grams of actual methamphetamine. He was detained pending sentencing.

At the sentencing hearing on February 5, 2008, the district court judge found the base offense level to be 32 under U.S.S.G. § 2D1.1. Two levels each were subtracted for Kramer's safety valve and role in the offense. However, the district court denied Kramer's request for a downward adjustment for acceptance of responsibility. Kramer's final adjusted offense level was 28, with a criminal history category I and an advisory guideline sentence of 78 to 97 months' imprisonment. The district court sentenced Kramer to 97 months' imprisonment and imposed an 8-year term of supervised release and a $100 mandatory special assessment.

The district court denied Kramer a downward adjustment for acceptance of responsibility because of his fraud relating to food stamps, which occurred less than a year prior to sentencing. On May 21, 2007, Kramer had applied for a food stamp card. Before receiving such cards, applicants are usually informed of the prohibition against trading, selling, or giving away food assistance benefits. Program participants must also notify the Department of Human Services if they are incarcerated. Upon approval, applicants receive a food stamp card and must call an 800 number to activate the card and retrieve a pin number.

Kramer received an Electronic Benefit Transfer ("EBT") food stamp card shortly after applying for the card on May 21, 2007. The first transaction on Kramer's card occurred on May 27, 2007. Additional funds were automatically deposited onto Kramer's EBT card in June, July, August, and September of 2007. After the September deposit, the Department of Human Services terminated deposits in Kramer's EBT account upon discovering that he was in prison. While Kramer was imprisoned, his food stamp card had been used 34 times, totaling $519.19. The first of these transactions occurred on June 8, 2007 and the last on January 12, 2008.

On November 9, 2007, Ray Krug, who ran the Cedar House Shelter in Iowa where Kramer stayed prior to incarceration, was videotaped using Kramer's EBT card to purchase food items at Wal-Mart. Krug had initially entered the wrong pin number for the EBT card, but then reentered the correct number. Krug also purchased additional items for the Cedar House Shelter that did not qualify for purchase under the EBT program and signed a receipt for a tax exempt sale. Meanwhile, during the summer and fall of 2007, Ray Krug deposited a total of $70 into Kramer's jail accounts following Kramer's requests for money in mailed correspondence. When confronted by Investigator Bob Gorsuch after the last transaction in January, Krug denied any knowledge of Kramer's EBT card. Krug later told Investigator Gorsuch that he had found three EBT cards, including Kramer's EBT card.

Kramer denies involvement in any kind of food stamp fraud and argues that, in any case, the fraud should not outweigh his acceptance of responsibility for the drug activities. He therefore timely appealed the district court's sentence, arguing that the sentence was unreasonable and that the district court erred in denying him a sentence reduction for acceptance of responsibility.

## II. ANALYSIS

We review the district court's denial of a sentence reduction for acceptance of responsibility for clear error, giving great deference to the district court's factual determination of whether a defendant has demonstrated acceptance of responsibility. *United States v. Winters*, 416 F.3d 856, 860 (8th Cir. 2005). We review a district court's sentence for abuse of discretion. *Gall v. United States*, 128 S.Ct. 586, 597 (2007).

Kramer first argues that the district court should have reduced his sentence due to his acceptance of responsibility for the drug activities. Kramer entered into a plea agreement, pleaded guilty, and provided the government with a safety valve interview. However, "continued criminal conduct, even if minor and unrelated to the offense of conviction, can make a sentence reduction for acceptance of responsibility inappropriate." *United States v. Ngo*, 132 F.3d 1231, 1233 (8th Cir. 1997). Furthermore, a sentence reduction for acceptance of responsibility is not available as a matter of right after a guilty plea. Evidence of a guilty plea may be outweighed "by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.3. Here, the record indicates that Kramer probably participated in food stamp fraud around the time of sentencing, conduct that supported the decision of the district court to deny Kramer a sentence reduction for acceptance of responsibility.

Kramer next argues that alleged criminal conduct unrelated to the crime charged cannot serve as a district court's basis for denying acceptance of responsibility. However, this Court has repeatedly held that the district court may use a defendant's post plea conduct, even if unrelated to the offense of conviction, to deny acceptance of responsibility. *See e.g.*, *Peters v. United States*, 464 F.3d 811, 812-13 (8th Cir. 2006); *United States v. Byrd*, 76 F.3d 194, 197 (8th Cir. 1996); *United States v.*

*Nguyen*, 52 F.3d 192, 194 (8th Cir. 1995); *Ngo*, 132 F.3d at 1233; *United States v. Thomas*, 989 F.2d 277, 277 (8th Cir. 1993).

Lastly, Kramer argues that his sentence, at the top of the guidelines range, is unreasonable because the district court erred in considering his criminal history to be serious. However, Kramer's criminal history includes a 25-year prison sentence for aggravated robbery, a 1-year prison sentence for escape, a 90-day court supervision for driving after being suspended, a 1-year probation and $1,168.00 fine for unlawful delivery of cannabis, a fine for an open container charge, and a 1-day stay in jail and a $50.00 fine for public intoxication and disorderly conduct. The extent of Kramer's criminal history suggests that the district court did not commit error by considering Kramer's record of criminal activity to be serious.

Furthermore, the district court properly calculated and considered Kramer's advisory guideline sentence as required by *Gall*, 128 S.Ct. at 597. The district court also addressed the substance of the § 3553(a) factors and gave a detailed explanation of its reasons for imposing a sentence at the top of the advisory guideline sentencing range.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's sentence.

_____