# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1296

_____

United States of America,       *
           *
      Plaintiff-Appellee,       *
           *    Appeal from the United States
    v.                 *    District Court for the
           *    Eastern District of Arkansas.
Timothy Daniels,          *
           *
      Defendant-Appellant.     *

_____

Submitted: September 22, 2010
Filed: November 29, 2010

_____

Before SHEPHERD, BRIGHT, and ARNOLD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

A jury convicted Timothy Daniels of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The district court[1] held a sentencing hearing, stated that it intended to sentence Daniels to 216 months' imprisonment (18 years) and three years' supervised release, but reserved imposing a final sentence until it reviewed the trial transcript to determine whether sufficient evidence supported several sentencing enhancements. The court then held a second sentencing hearing, at which it heard additional evidence, and sentenced Daniels to

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

216 months' imprisonment and five years' supervised release. Daniels appeals, challenging his conviction and sentence. We conclude sufficient evidence supports his conviction and the district court did not err in sentencing.

I.

On December 14, 2006, Pine Bluff Police Officers Larry Crater and Archie Rhoden responded to an armed disturbance call in the area of 4307 West Seventh Street. After speaking with residents where the original call was made, Officers Crater and Rhoden separated and searched the nearby area. Approximately seven blocks away, Officer Crater found Glendale Hayes and Timothy Daniels, two men who fit the residents' descriptions. Officer Crater subsequently searched them for weapons and found thirteen CCI-brand .40 caliber bullets in Daniels' front pocket. Officer Crater did not find any weapons or ammunition on Hayes. Officers observed that Daniels was upset because Hayes had possessed Daniels' vehicle which had been stolen.

The officers let Hayes leave. As he was leaving, the officers observed him retrieve a pistol from a ditch beside the road. The officers then stopped Hayes and examined the weapon. The Smith and Wesson semi-automatic pistol contained nine live rounds, one round was in the chamber, and the safety was off. The ammunition found on Daniels matched the ammunition found in the gun. After being arrested, Hayes informed the officers that Daniels owned the firearm in question, had shot at him twice, had held him at gunpoint, and then threw the gun into the ditch as police approached. Hayes later testified at trial that he had retrieved the weapon because he planned to shoot Daniels.

A grand jury indicted Daniels for being a felon in possession of a firearm and ammunition. Hayes was charged in state court with unlawfully possessing a firearm. Pursuant to an agreement with the United States Attorney's Office, Hayes avoided

federal charges by pleading guilty to the state charge and agreeing to testify at Daniels' trial.

Daniels proceeded to trial, and a jury found him guilty of being a felon in possession of a firearm and ammunition. The district court held a sentencing hearing on December 18, 2009, at which the government relied upon trial testimony to show that Daniels possessed a firearm in connection with another offense under U.S.S.G. § 2K2.1(b)(6). The court stated it similarly recalled the trial testimony, but wanted to review the trial transcript before imposing a sentence. The court stated that it anticipated sentencing Daniels to 216 months' imprisonment and three years' supervised release.

The district court held another sentencing hearing on January 28, 2010. The court stated that after reviewing the trial transcript, it questioned the proof to support the sentencing enhancement under U.S.S.G. § 2K2.1(b)(6). Over Daniels' objection, which was overruled by the district court, the government called Officers Crater and Rhoden who relayed statements made by the residents who reported the armed disturbance. According to the officers, the residents reported that one man marched another man down the street at gunpoint and the officers testified that the residents' descriptions of these two men matched that of Daniels and Hayes.

At the close of the hearing, the court found Daniels possessed the firearm and marched Hayes down the street at gunpoint. The court determined that Daniels' total offense level was 30, after applying a two-level enhancement because the firearm was stolen and a four-level enhancement because Daniels possessed the firearm in connection with another offense. But the court then determined that Daniels' prior burglary offenses required application of the Armed Career Criminal Act. And under U.S.S.G. § 4B1.4, the court found that Daniels' offense level was 34 and his criminal history category was VI. Consequently, his sentencing range was 262 months to 327 months (21 years, 10 months – 27 years, 3 months). The district court varied

downward and sentenced Daniels to 216 months' imprisonment and five years of supervised release.

## II. Conviction

Daniels argues insufficient evidence supports the jury's verdict that he was a felon in possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1).

We review sufficiency of the evidence claims de novo and reverse only if no reasonable jury could have found Daniels guilty. *United States v. Elzahabi*, 557 F.3d 879, 885 (8th Cir. 2009). To convict Daniels under 18 U.S.C. § 922(g)(1), the government needed to prove beyond a reasonable doubt that: (1) Daniels had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) Daniels knowingly possessed a firearm and ammunition; and (3) the firearm and ammunition had been in, or had affected, interstate commerce. *See United States v. Horsman*, 114 F.3d 822, 824 (8th Cir. 1997).

Daniels stipulated at trial that the first and third elements had been met. On appeal, he argues that the government failed to introduce sufficient evidence that he knowingly possessed a firearm. He argues that the only evidence to support this element is the testimony of Hayes, and Hayes admitted that he wanted to shoot and kill Daniels. Daniels maintains that it is facially implausible that Hayes would shoot and kill him, but would never lie against him.

At trial, Officers Crater and Rhoden testified that Hayes and Daniels fit witnesses' descriptions of the two individuals who caused the armed disturbance. The officers testified that they found thirteen CCI brand .40 caliber bullets in Daniels' pocket. Officer Rhoden testified that the gun held eleven bullets, but only contained nine CCI brand .40 caliber bullets when it was recovered. Hayes testified that Daniels shot at him twice and then Daniels threw the gun in the ditch. This evidence is

sufficient for a reasonable jury to conclude that Daniels knowingly possessed the firearm, and we affirm the conviction.

## III.  Sentence

Daniels challenges his sentence, arguing the district court erred in (1) sentencing him under the Armed Career Criminal Act ("ACCA"); (2) denying his request for an acceptance of responsibility reduction; and (3) re-sentencing him and allowing the government to present additional evidence at a second sentencing hearing.  We address each argument in turn.

## A.  ACCA

Daniels first challenges the district court's determination that he should be sentenced to a fifteen-year statutory minimum sentence under ACCA.  He claims his prior burglary offenses do not qualify as separate violent felony convictions.

"We review de novo whether an offense is a violent felony under ACCA." *United States v. Oaks*, 606 F.3d 530, 543 (8th Cir. 2010).  A person convicted of being a felon in possession of a firearm is an armed career criminal if he or she has three prior convictions for a serious drug offense or violent felony.  18 U.S.C. § 924(e).  The ACCA defines the term "violent felony" to include burglary.  18 U.S.C. § 924(e)(2)(B)(ii).

Daniels concedes that he has three or more burglary convictions, but he contends that the burglaries were part of a criminal spree.  He claims that he was only arrested twice for these burglaries, and therefore, his convictions should not qualify as three separate violent felony convictions.

The record shows that Daniels' prior burglaries spanned a one-year period, occurred on different dates, related to different victims, and were committed at different locations. Therefore, these offenses occurred on different occasions. The district court thus did not err in determining that Daniels had been convicted of three prior violent felonies and that those convictions qualified Daniels to be an armed career criminal. *See* 18 U.S.C. § 924(e)(1); *see also United States v. Adams*, 37 F.3d 383, 384 (8th Cir. 1994) (holding that prior burglaries constitute separate and distinct offenses when they occur on different dates and at separate locations); *United States v. Hamell*, 3 F.3d 1187, 1191 (8th Cir. 1993) (holding that assaults on two different victims that occurred within 25 minutes of one another, but in different locations, were separate criminal episodes for ACCA purposes); *United States v. Gibson*, 928 F.2d 250, 254 (8th Cir. 1991) (holding that three burglaries occurring in a one-month span were separate offenses under the ACCA).

Because the district court correctly determined Daniels should be sentenced as an armed career criminal, it next needed to determine his offense level and criminal history category under U.S.S.G. § 4B1.4. Section 4B1.4 provides that the offense level for an armed career criminal is 34 and his criminal history category VI "if the defendant used or possessed the firearm or ammunition in connection with . . . a crime of violence." Section 4B1.2 defines "crime of violence" as any offense that is punishable by imprisonment for a term exceeding one year, that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Daniels argues that the district court erred in determining his offense level and criminal history category under U.S.S.G. § 4B1.4. We review the district court's

application of the sentencing guidelines de novo and its findings of fact for clear error. *United States v. Mack*, 343 F.3d 929, 935-36 (8th Cir. 2003).

The district court's finding that Daniels marched Hayes down the street at gunpoint received ample support in the evidence, and the testimony showed that Daniels' actions at the scene either involved an attempt to use physical force or a threat of physical force against Hayes. This conduct constituted a crime of violence under U.S.S.G. § 4B1.2(a)(1). Accordingly, the district court properly determined that Daniels' offense level was 34 and his criminal history category was VI. [2]

## B. Acceptance of Responsibility

Daniels argues the court should have granted him a two-level reduction for acceptance of responsibility because he claims that he admitted to possessing the ammunition.

This court reviews the district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error. *United States v. Herron*, 539 F.3d 881, 887 (8th Cir. 2008). Daniels bears the burden of demonstrating that he is entitled to a reduction for his acceptance of responsibility. *See id.* at 887-88. To receive this reduction, a defendant cannot minimize his conduct or partially accept responsibility. *United States v. Ngo*, 132 F.3d 1231, 1233 (8th Cir. 1997). Moreover, Application Note 2 to U.S.S.G. § 3E1.1 provides:

---

[2]Daniels also claims the district court erred in determining that his base offense level was 30 because it should not have applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6). Because we conclude the district court did not err in determining his offense level was 34 under U.S.S.G. § 4B1.4(b)(3)(A), which resulted in a greater offense level, we need not decide this issue.

This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

We conclude this is not the "rare situation" where Daniels is entitled to a reduction for acceptance of responsibility in spite of the fact that he proceeded to trial. Daniels put the government to its proof, maintaining throughout the proceedings that he did not possess the gun. Therefore, Daniels has not shown the district court clearly erred in denying his request for a reduction for acceptance of responsibility.

## C. Sentencing Hearing

Daniels next argues that the district court erred in holding two sentencing hearings. Daniels claims the district court orally pronounced its sentence at the December 18, 2009, hearing, and that constituted a final sentence. As such, he argues the court lacked jurisdiction under Fed. R. Crim. P. 35(c) to hold a second sentencing hearing and to increase his supervised release term from three years to five years.

We disagree with Daniels that the district court imposed a final sentence. At the December 18, 2009, hearing, the district court announced that it intended to withhold imposing a final sentence until it had the opportunity to review the trial transcript. The court stated, "I'm not going to [review the trial transcript] right now. I'll have to postpone what I do. I assume we can finish this. Then I'll make my

decision. We may have to assemble again for the sentence." Add. at 2. The court further stated that it "reserve[d] the right . . . to change [its] mind if the transcript and the records indicate otherwise." Add. at 4. Most telling, at the end of the hearing, the court informed the parties that it would send both attorneys a copy of the findings based on the transcript, give the parties an opportunity to respond to the findings, and "[t]hen I'll make the sentence final and enter the judgment and commitment order." Add. at 6. Both parties agreed to the district court's proposed disposition of the situation. The record shows that the district court did not impose a final sentence at the December 18, 2009, hearing.

In addition to the jurisdictional argument, Daniels asserts that the district court erred in allowing the government to present the testimony of two police officers when the government failed to do so at the first sentencing hearing. Although this presents a much closer question, we need not determine whether the district court erred. Even if we exclude the officers' additional testimony at the second sentencing hearing and limit our review of the sentencing issues to only trial testimony, ample evidence supported the court's determination that Daniels used or possessed the firearm in connection with a crime of violence. *See* U.S.S.G. § 4B1.4.

IV.

Sufficient evidence supports Daniels' conviction for being a felon in possession of a firearm and ammunition, and the district court did not err in sentencing him to 216 months' imprisonment and five years of supervised release. We have carefully considered Daniels' remaining claims and conclude them to be without merit. We affirm the judgment of the district court.

_____