# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2574

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Plaintiff - Appellee,　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Western District of Arkansas.
Clifford Johnson,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Defendant - Appellant.　　*

_____

Submitted: April 13, 2005
Filed: May 27, 2005

_____

Before MURPHY, HANSEN, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Clifford Johnson pled guilty to conspiring to possess pseudoephedrine having reasonable cause to believe it would be used to manufacture methamphetamine. Johnson was sentenced to 97 months and he appeals, arguing that the district court[1] erred by failing to give him a minor role reduction and that his sentence violates the Sixth Amendment. We affirm.

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

A confidential informant told the Drug Enforcement Administration (DEA) that Teddy French ran an organization that distributed approximately three to five pounds of methamphetamine every couple of weeks in Kansas City, Missouri and that Johnson was one of French's sources of ephedrine. After Johnson contacted the informant numerous times in October and November 2003 to try to obtain pseudoephedrine, the informant put an undercover DEA officer in touch with him.

The officer called Johnson and asked him how many boxes of pills he was willing to purchase. Johnson responded that he and his partner were willing to buy up to 30 boxes. The officer told Johnson that the first 250,000 pills would cost thirty five cents each and any over that amount would cost thirty cents per pill. He told Johnson that he could deliver the pills the next Friday, but Johnson said, "No, that's too far away, we are hurting and this was supposed to happen last Monday." Johnson also said that they needed the pills as soon as possible because they had been putting people off. The officer told Johnson that he would see what he could do and would call him later.

The officer called Johnson back about thirty minutes later and told him he could deliver 21 cases of pseudoephedrine which would be 302,400 pills at a cost of $90,720. Johnson responded that that would be fine, and they arranged to meet in Fayetteville, Arkansas to complete the transaction the next Tuesday. The officer told Johnson that he understood that he and his partner might want to trade some product for part of the price of the pills, but Johnson said that they could not do that this time because "everything is so tight down here and we are the only ones doing it." The officer then said that it must be nice to have good business, and Johnson replied, "Yes, it is so good we have five pounds going to one guy." Johnson asked the officer how many times a month he could deliver pills and said that they could use as many as the officer could bring. The officer said that if everything went well this time, he could deliver twice a month, and he arranged to call Johnson on Tuesday to let him know what time he would be arriving in Fayetteville.

The officer called Johnson on Tuesday, November 18, 2003 and said that he was on his way to Fayetteville with 21 cases of pills and asked if Johnson and his partner were still willing to purchase the pseudoephedrine. Johnson said that they were, and the officer told him he would call when he reached his hotel room.

After arriving at the Clarion Inn in Fayetteville, the officer called Johnson and said that he was ready to complete the transaction and that he would wait in his hotel room for him. Johnson asked how he was going to get his cut for setting up the sale. The officer answered that he had assumed Johnson's partner would take care of him. Johnson said he had told his partner that all the pills cost thirty five cents, not that some would only be thirty cents, and Johnson had assumed he would get the difference. The officer said fine since Johnson had made those arrangements but he would keep one fourth of the profit since Johnson had not cleared it with him first. Johnson agreed to those terms and told the officer that he and his partner would come to his hotel room. Based on this conversation, the officer was expecting to receive $105,840 from Johnson and his partner for the 21 cases containing 302,400 pills.

Johnson called the officer in his hotel room later that evening and explained that his partner had been in trouble with the law in the past and was nervous about the meeting. Johnson then gave the phone to Teddy French who said that he and his son would like to meet some place other than in the hotel room. After the officer said he was unwilling to go anywhere else to transact the business, French agreed to meet in the hotel.

French, his son Chris, and Johnson then drove to the hotel, and Johnson introduced his companions to the officer. After a short conversation French said they had brought all of the money. The officer went out to his vehicle to get a case of pills for them to inspect. He brought the case into the room, opened it, and handed them a box of pills. The Frenches inspected the pills, and Chris retrieved money from their vehicle and handed it to the officer. The officer told French that the rest of the pills

were in his truck and handed the keys to Johnson. He suggested that Johnson and the Frenches take his truck, unload the pills, and then bring it back to the hotel. If there were any problems with the pill or money count, it could be worked out when they returned. The officer asked French if he would be able to handle 30 cases of pills a month, and French said that he was not sure but they could discuss it later.

Johnson and the Frenches went out with the officer to his truck. He opened the back end and pointed out the boxes with the pills and then gave a verbal and visual arrest signal. The three men were arrested, and thereafter Teddy French made four attempts to bribe arresting and investigating officers.

A complaint was filed on November 19, 2003 charging Johnson, Teddy French, and Chris French with conspiracy to possess pseudoephedrine. Johnson later waived his right to an indictment and pled guilty to a one count information charging him with conspiring with others, both known and unknown, to possess pseudoephedrine having reasonable cause to believe it would be used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(2) and 846. The Frenches fled to avoid prosecution, and Johnson provided valuable information to the United States Marshals Service that led to their arrest while they were living in Honduras under assumed names.

A Presentence Investigation Report (PSR) was prepared before Johnson's sentencing. At the initial sentencing hearing Johnson objected to the PSR's failure to recommend that he receive a minor participant reduction under U.S.S.G. § 3B1.2(b), and the court asked the probation officer to prepare a supplemental report describing the conduct of the other participants. At the final sentencing hearing, the district court found that Johnson was accountable for 302,400 pseudoephedrine pills, amounting to 18.14 kilograms of pseudoephedrine, which resulted in a base offense level of 38 under the sentencing guidelines. For his acceptance of responsibility the court reduced the offense level two levels under U.S.S.G. § 3E1.1(a) and another one

-4-

under § 3E1.1(b). The court found that Johnson had not played a minor role and denied a § 3B1.2(b) reduction, but it granted the government's motion for a five level downward departure under U.S.S.G. § 5K1.1 based on Johnson's substantial assistance. The resulting total offense level of 30, combined with Johnson's criminal history category I, led to a sentencing range of 97 to 121 months. The court imposed a sentence of 97 months.

Johnson argues on appeal that the district court erred by failing to grant him a two level reduction as a minor participant and that his sentence violated the Sixth Amendment in light of Blakely v. Washington, 124 S. Ct. 2531 (2004), United States v. Booker, 125 S. Ct. 738 (2005), and Shepard v. United States, 125 S. Ct. 1254 (2005).

Johnson argues that he was entitled to the minor role reduction because he was not as culpable as the Frenches, had a lesser role in the offense, and cooperated with the authorities, citing United States v. Martin, 369 F.3d 1046 (8th Cir. 2004) (minor role reduction not clearly erroneous where another defendant obstructed justice and organized the illegal scheme). He points out that the Frenches fled to Honduras under assumed names in order to escape prosecution and that Teddy French not only obstructed justice by fleeing, but he was in charge of the drug manufacturing operation and attempted to bribe arresting officers.

The government responds that the court did not err by refusing to find that Johnson was a minor participant in the conspiracy. It contends that Johnson was not entitled to a mitigating role reduction because he was deeply involved in the offense and that Johnson clearly was the negotiator, coordinator, and middleman for the transaction between the Frenches and the undercover officer.

Whether a defendant qualifies for a mitigating role reduction is a question of fact which we review for clear error. United States v. Johnson, 358 F.3d 1016, 1017-

18 (8th Cir. 2004). A defendant may be eligible for the § 3B1.2(b) reduction if his culpability for the relevant conduct is relatively minor compared to that of other participants, United States v. Snoddy, 139 F.3d 1224, 1231 (8th Cir. 1998), but the mere fact that a defendant is less culpable does not entitle him to the reduction. Id. at 1228. To determine whether a reduction is appropriate, the court compares "the acts of each participant in relation to the relevant conduct for which the participant is held accountable" and measures "each participant's individual acts and relative culpability against the elements of the offense." Johnson, 358 F.3d at 1018.

The record shows that Johnson was deeply involved in the offense. Johnson was responsible for finding a large supplier of pseudoephedrine for the Frenches' manufacturing operation. After the confidential informant placed Johnson in contact with the undercover officer, he arranged to buy a large quantity of pseudoephedrine and negotiated specific terms for the sale, including the quantity of pills, the price, and the date and location of the transaction. Throughout the negotiations Johnson spoke of Teddy French as his partner, and he arranged to be paid by the officer for his role in setting up the sale. Johnson introduced the Frenches to the officer and attended the meeting at the hotel room where the sale was supposed to take place. The district court did not clearly err in finding that Johnson did not play a minor role in the conspiracy to distribute methamphetamine. See United States v. Jones, 145 F.3d 959, 963 (8th Cir. 1998) (less culpable defendant not entitled to reduction if defendant was "deeply involved").

Johnson also contends that his Sixth Amendment rights were violated under Blakely v. Washington, 124 S. Ct. 2531 (2004), because his sentence was enhanced under the sentencing guidelines by a judge finding that he was accountable for 18.14 kilograms of pseudoephedrine. In a motion for supplemental briefing, he argues that he should be resentenced under a truly advisory system with the guidance provided by United States v. Booker, 125 S. Ct. 738 (2005), and that information about his

prior criminal record should have been submitted to a jury under a reasonable doubt standard, citing Shepard v. United States, 125 S. Ct. 1254 (2005).

Johnson failed to object to the drug quantity calculation in the PSR, and the court could therefore accept that quantity as admitted for sentencing purposes. United States v. Moser, 168 F.3d 1130, 1132 (8th Cir. 1999) (unless defendant objects to a specific factual allegation contained in the PSR, the sentencing court may accept that fact as true). Johnson was sentenced before the Supreme Court held that the federal sentencing guidelines are only advisory, Booker, 125 S. Ct. at 756-57, but he did not raise his constitutional issues in the district court and must show plain error to prevail. See United States v. Olano, 507 U.S. 725, 731-32 (1993). Under plain error review, there must have been an error that is plain which affected substantial rights. United States v. Cotton, 535 U.S. 625, 631 (2002). If those requirements are met, we will reverse if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotations and internal marks omitted). For an error to affect substantial rights, it must generally have affected the outcome of the proceedings below, id. at 632, and a defendant has not met that burden if the effect of an error is uncertain. See Jones v. United States, 527 U.S. 373, 394-95 (1999).

We conclude that Johnson has not shown that the mandatory application of the federal sentencing guidelines affected his substantial rights because he has not demonstrated a reasonable probability that the district court would have imposed a more favorable sentence if the guidelines had been applied as advisory rather than mandatory. United States v. Pirani, No. 03-2871, slip op. at 11 (8th Cir. en banc Apr. 29, 2005). After granting the § 5K1.1 motion, the district court could have imposed a lower sentence than the government suggested but it did not. See United States v. Pizano, 403 F.3d 991, 995 (8th Cir. 2005) (court decides whether and to what extent a sentence should be reduced for substantial assistance). The court stated in fact that it had reservations about whether or not it should even grant the five level reduction requested by the government. Although Johnson had very little criminal history, the

court observed that Johnson's crime was very serious. It decided, however, to give him what it characterized as an unusual benefit by means of the five level downward departure. It indicated that under all the circumstances a sentence at the low point of the 97 to 121 month guideline range was appropriate. We also note that Johnson's counsel admitted at oral argument that there was overwhelming evidence of the quantity of pseudoephedrine involved in the undercover sale he organized. Given such overwhelming evidence, there was a sound basis for the district court's assessment of the nature of Johnson's crime and its determination of drug quantity. We conclude that Johnson has not demonstrated plain error and that neither Blakely nor Booker require that Johnson be resentenced.

Finally, the Supreme Court's Shepard decision does not affect Johnson's sentence. As the Court held in Almendarez-Torres v. United States, 523 U.S. 224 (1998), a prior felony conviction is a sentencing factor for the court rather than a fact issue for the jury. This holding was specifically reaffirmed in Booker, 125 S. Ct. at 756. See also, Blakely, 124 S. Ct. at 2536; Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The Supreme Court has never overruled its decision in Almendarez-Torres, and Shepard did not alter the rule that a court may consider prior criminal history as a sentencing factor. See United States v. Mattix, 404 F.3d 1037 (8th Cir. 2005).

In sum, the district court did not clearly err by not finding Johnson a minor participant in the conspiracy, and Johnson's Sixth Amendment rights were not violated by its drug quantity finding or its consideration of his prior criminal history. Johnson has not demonstrated a reasonable probability that he would have received a more favorable sentence if the guidelines had been treated as advisory rather than mandatory, and the sentence imposed in his case was not unreasonable.

We accordingly affirm the judgment of the district court and deny the motion for supplemental briefing.

_____