# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2345

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Lesia Ann Jackson, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: June 22, 2005
Filed: August 22, 2005

———————

Before RILEY, BOWMAN, and BENTON, Circuit Judges.

———————

RILEY, Circuit Judge.

Lesia Ann Jackson (Jackson) pled guilty to one count of aiding and abetting attempted bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(a). The district court[1] sentenced Jackson to 66 months' imprisonment and 3 years' supervised release. Jackson appeals her sentence, arguing the district court misapplied the United States Sentencing Guidelines (Guidelines). Jackson further argues her sentence violated the Sixth Amendment. We affirm.

———————

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

## I. BACKGROUND

From July 22 to September 26, 2002, Jackson worked as a lead teller at the Wells Fargo Bank in Edina, Minnesota (bank). One of Jackson's duties as a bank teller was to close and secure the bank building at the end of the day. The bank closed its lobby at 5:00 p.m. and offered drive-through service until 6:00 p.m.

In late October or early November 2002, as Jackson was leaving a check-cashing establishment, she encountered Tony Banks (Banks) and a man she knew only as "Derrick," two men who used to sell her drugs. Banks and Derrick told Jackson they heard she worked at a bank, and they wanted her to "help them get some information." Jackson denied working at a bank and refused to help Banks and Derrick.

Jackson tried to avoid Banks and Derrick, but one day Banks and Derrick saw Jackson outside her friend's house, and they forced her into their car. Banks and Derrick threatened to pour gasoline on Jackson and her son and "burn [them] up," if she did not help them obtain information from the bank's computer. Jackson was very frightened, but she did not report the threats to police.

Around 4:00 p.m. on November 20, 2002, the day of the attempted bank robbery, Banks and Derrick telephoned Jackson and said they were on their way to pick her up. Jackson waited for Banks and Derrick a couple of blocks away from her home. Inside the car were Banks, Derrick, and another man whom Jackson did not know. Once inside the car, Jackson saw several book bags, one of which contained a mask. At this point, Jackson began wondering whether the men intended to rob the bank rather than simply obtain information from the bank's computers. Jackson said she never saw any weapons. Jackson removed her high-heeled shoes, put on gym shoes which were inside one of the book bags, and placed her high-heeled shoes inside one of the book bags.

Shortly before the bank lobby closed at 5:00 p.m., the vehicle in which Jackson was riding pulled into the bank's parking lot. Jackson and the unidentified male entered the bank and went into the basement. The bank building was used formerly as a mortuary and has a labyrinth of rooms in the basement. Jackson and the unidentified male hid in the basement labyrinth while bank employees went downstairs to get their belongings before leaving. Because Jackson used to work at the bank, she knew only two employees would be in the building after the lobby closed. At 6:00 p.m., one of the two remaining bank tellers went downstairs to collect her belongings. Jackson knew, as part of the bank's closing procedures, the two remaining tellers would then secure the bank and exit the building.

A little after 6:00 p.m., the unidentified male put on a ski mask and instructed Jackson to cover her head with a paper towel. Believing the bank was empty, Jackson and the unidentified male walked upstairs to the lobby. Upon hearing voices, Jackson peered over the counter and observed two bank tellers standing near the drive-through window. The bank tellers entered the lobby, and Jackson heard the tellers scream. Attempting to avoid detection, Jackson jumped over the counter and ran towards the exit. However, Jackson forgot the book bag containing her high-heeled shoes, so she "made a U-turn and came back alongside the outside of the corner, picked up the book bag and ran directly out the door." Jackson walked home and disposed of the book bag in a dumpster near her home.

While attempting to rob the bank, the unidentified male ordered the bank tellers to lie on the floor. The tellers complied and heard the unidentified male say, "If they try anything funny, just shoot them."[2] Jackson maintains she had exited the bank before the unidentified male threatened the tellers. While the tellers were lying on the floor, the unidentified male took their bank keys and demanded the entry code to

---

[2]Jackson never saw a gun or weapon, and there is no evidence weapons were used in the attempted robbery.

the vault. Unable to obtain any cash, he fled with the bank keys. The unidentified male has never been identified or apprehended. Edina police officers identified Jackson from the bank surveillance video.

On December 27, 2002, the government charged Jackson with attempted bank robbery. On July 23, 2003, Jackson and the government entered into a plea agreement, and Jackson entered a plea of guilty to one count of aiding and abetting attempted bank robbery. The plea agreement provided for a two-level sentencing enhancement because the crime involved a financial institution, a two-level reduction for Jackson's minor role in the offense, and a three-level reduction for Jackson's acceptance of responsibility. Based on a criminal history category of III and a total offense level of 17, the plea agreement expressed the parties' belief that a sentencing range of 30 to 37 months' imprisonment was possible.

Before sentencing, the United States Probation Office prepared a presentence investigation report (PSR). Contrary to the plea agreement, the PSR did not recommend Jackson receive a reduction for minor role and further recommended she receive a two-level enhancement for threat of death. Based on a criminal history category of IV and a total offense level of 21, the PSR recommended a sentencing range of 57 to 71 months' imprisonment. On May 18, 2004, the district court accepted the PSR's recommendations and sentenced Jackson to 66 months' imprisonment.

Jackson contends the district court committed three sentencing errors: (1) imposing a two-level enhancement for threat of death under U.S.S.G. § 2B3.1(b)(2)(F); (2) refusing to apply a two-level reduction to reflect her minor role in the offense under U.S.S.G. § 3B1.2(b); and (3) enhancing her sentence based on judicial findings neither admitted by her nor proved to a jury beyond a reasonable doubt. The government now supports the district court's imposition of the two-level

threat-of-death enhancement and the district court's refusal to apply a two-level reduction for minor role.

## II.    DISCUSSION
### A.    Threat-of-Death Enhancement

Jackson contends the unidentified male's threat of death to the bank tellers during the attempted bank robbery was not reasonably foreseeable to her, and therefore, the district court misapplied a two-level enhancement for threat of death. Whether a co-conspirator's actions were reasonably foreseeable is a question of fact reviewed for clear error. United States v. Cover, 199 F.3d 1270, 1274 (11th Cir. 2000); see also United States v. Killgo, 397 F.3d 628, 631 (8th Cir. 2005) (reviewing for clear error the district court's findings made on questions of relevant conduct).

The Guidelines mandate a two-level enhancement if, during a robbery, "a threat of death was made." U.S.S.G. § 2B3.1(b)(2)(F). Co-conspirators are responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). If a co-conspirator assaults a victim during a robbery, the other co-conspirator

> is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

U.S.S.G. § 1B1.3, cmt. n.2.

Although Jackson may not have agreed to the threat of death her co-conspirator made during the attempted robbery, Jackson is accountable for her co-conspirator's

threatening statement. Before entering the bank, Jackson knew her co-conspirators intended to rob the bank: "I knew the motive that they had for going in the bank, even though they told me that it was a different motive, I knew that they were going inside of that bank to rob that bank, and I went along with them into that bank, umm. Yes, I was under pressure, but I knew what they were going to do." Moreover, Jackson knew her co-conspirators might resort to violence, because Banks and Derrick previously had threatened Jackson and her son: "[Banks and Derrick] told me if I didn't get the information off the computer for them, that they were gonna set, put gasoline on me and my son and burn us up." The district court did not clearly err in finding the death threat was made in furtherance of a jointly undertaken attempted bank robbery and was reasonably foreseeable to Jackson. The district court appropriately applied a two-level enhancement for a threat of death under section 1B1.3(a)(1)(B).

### B.    Minor Role Reduction

Jackson next argues the district erred in declining to apply a two-level reduction for minor role under U.S.S.G. § 3B1.2(b). A defendant is eligible for a mitigating role reduction if the defendant's role is relatively minor compared to the role of other participants. United States v. Johnson, 408 F.3d 535, 538 (8th Cir. 2005). We will reverse a district court's determination of whether a defendant was a minor participant only if clearly erroneous. United States v. Johnson, 358 F.3d 1016, 1017 (8th Cir. 2004).

The record shows Jackson not only actively participated in the attempted robbery, but her involvement was essential to the commission of the offense. Without Jackson's participation, the attempted robbery probably would not have occurred. Jackson worked at the bank and became knowledgeable about the bank's layout and closing procedures. Using this knowledge, Jackson and her co-conspirator entered the bank shortly before the lobby closed at 5:00 p.m. and concealed themselves in the

basement labyrinth until they believed the bank was empty.  The district court did not clearly err in finding Jackson did not play a minor role in the offense.

### C.     **Blakely/Booker** Plain Error

Finally, Jackson contends the district court violated her constitutional rights by enhancing her sentence based on judicial findings that were neither admitted by her nor proved to a jury beyond a reasonable doubt, as determined in <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004).  In <u>Blakely</u>, the Supreme Court held the State of Washington's mandatory sentencing system was unconstitutional. <u>Id.</u> at 2538.  The Court extended this holding to the federal Guidelines in <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738, 756 (2005).

Because Jackson did not object at sentencing on constitutional grounds, we review for plain error.  <u>See</u> Fed. R. Crim. P. 52(b); <u>United States v. Pirani</u>, 406 F.3d 543, 549-50 (8th Cir. 2005) (en banc).  To establish plain error, Jackson must establish "(1) error, (2) that is plain, and (3) that affects substantial rights."  <u>Pirani</u>, 406 F.3d at 550 (quoting <u>Johnson v. United States</u>, 520 U.S. 461, 466-67 (1997)).  If Jackson meets these three conditions, then an appellate court may exercise its discretion to remand for resentencing if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  <u>Id.</u> at 550 (quoting <u>Johnson</u>, 520 U.S. at 466-67).

Jackson satisfies the first two prongs.  <u>Id.</u>  To prove the third prong, Jackson must show a reasonable probability "the district court would have imposed a more favorable sentence under the advisory guidelines regime mandated by Booker."  <u>Id.</u> at 547, 552.  We have reviewed the sentencing transcript and find no indication the district court would have imposed a more lenient sentence under an advisory Guidelines system.  Jackson claims Sixth Amendment plain error because her

sentence was increased four levels "based on factual findings made by a judge under the preponderance of the evidence standard"; however, Jackson does not argue the record supports a finding that the district court would have imposed a more favorable sentence under an advisory Guidelines regime. Therefore, Jackson has failed to prove plain error.

## III. CONCLUSION

We affirm Jackson's sentence.

_____