# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1978

_____

United States of America,         *
                                     *

        Plaintiff-Appellee,     *

                                     *   Appeal from the United States
     v.                          *   District Court for the
                                     *   Northern District of Iowa.

Eddie Louis Denton,        *

                                     *

        Defendant-Appellant.   *

_____

Submitted: October 13, 2005
Filed:  January 24, 2006 (Corrected on: 02/06/06)

_____

Before ARNOLD, MURPHY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

      Eddie Louis Denton was convicted by a jury of conspiracy to distribute 50 or more grams of cocaine base, 500 or more grams of cocaine, and a mixture containing marijuana, and cocaine within 1000 feet of two playgrounds.  The district court[1] sentenced him to life imprisonment.  Denton appeals, arguing that the district court abused its discretion by denying his motion for recusal, erred by finding him competent to stand trial, and erred in sentencing.  We affirm.

_____

     [1]The Honorable Linda Reade, United States District Judge for the Northern District of Iowa.

Denton was a retired police officer who was part of a group known as "the Click" which distributed crack cocaine in Waterloo, Iowa. Other members included John King, Damarius Simmons, Percy Bruce, Willie Outlaw Jr., and Jamall Sallis. Denton and five other members were indicted on September 25, 2002. The indictment charged Denton with conspiracy to distribute 50 or more grams of cocaine base, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), 500 or more grams of cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), a mixture containing marijuana, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), cocaine within 1000 feet of Sullivan Park, 21 U.S.C. § 860, and cocaine within 1000 feet of Highland Park, 21 U.S.C. § 860.

The Click used two main locations for distribution: Sullivan Park and a residence known as "the Hill." There was evidence at trial that Denton was often present at the Hill when crack cocaine was sold and that he sold crack there. Denton also ran errands for other members of the Click, including purchasing food, alcohol, and plastic bags that were used to package crack cocaine. In addition Denton drove around the neighborhood looking for police surveillance, and he told Click members about information from friends still on the police force. There was also testimony at trial that Denton was seen at the Hill carrying a handgun in an ankle holster and brandishing his weapon to King and others.

The Click's primary drug supplier was King's stepfather, Herbert Speller. Speller established a drug connection in California and began making trips to Los Angeles to acquire cocaine and marijuana. Denton accompanied him on some of these trips and used his police credentials if their car was stopped. Denton accompanied Speller on at least four or five trips to Los Angeles and at least one separate trip to Carbondale, Illinois to deliver cocaine to one of Speller's relatives. During one trip to Los Angeles, Speller and Denton had an accident and abandoned their vehicle. After the police came upon the car, they searched it and Detective Ramon Navarro discovered large plastic bags containing marijuana, two kilograms of cocaine, and luggage bearing the names Eddie Denton and Herbert Speller. A

short time later the two men were arrested at the airport while trying to rent another car. The police recovered over $5,700 cash from the two upon their arrest. In an interview with Detective Navarro, Denton first claimed he was in Los Angeles to help locate an apartment for Speller's daughter. Then he told Navarro that he was on a "top secret undercover mission" for the Waterloo Police Department and that he had infiltrated the Click on behalf of law enforcement. Denton was unable to tell Navarro the name of his undercover handler he said, because the information was "too top secret."

Prior to trial, in March 2001, Denton fell from a chair at work and suffered a subdural hematoma which was drained during emergency surgery. His injury resulted in serious brain damage and caused mild to moderate impairments in memory, speed of information processing, and personality changes.

In February 2003 Denton was offered a plea agreement with a potential sentencing range of 135 to 168 months, but he rejected it and went to trial. His theory of defense was that he was unaware of the Click's criminal activity. He admitted traveling with Speller but denied knowingly aiding Speller in transporting cocaine from Los Angeles to Waterloo. He also denied distributing crack cocaine from the Hill, but admitted he had a key to the residence and had observed others in the Click selling crack cocaine from that location. He also admitted that he had access to a gun similar to the one described by King and that he had been removed from the Waterloo Police Department after pleading guilty to accepting a bribe. The jury found that he was guilty of all five objects of the conspiracy and that his offense involved at least 50 grams of cocaine base and at least 500 grams of cocaine.

On October 6, 2003 prior to sentencing, Denton requested a competency examination. He claimed that he had been incompetent at trial and was not competent to be sentenced. The district court granted the motion, ordered a psychiatric examination of Denton, and scheduled competency and sentencing hearings for December 16, 2004. On December 3, 2004, Denton filed a motion to recuse the

district court from presiding over the competency hearing on the grounds that it had expressed a preliminary opinion as to his competence based on its personal observations. After observing him testify and react to questions during the trial the district court had commented that "there was nothing impairing his ability." The motion was denied.

The competency hearing was delayed until January 31, 2005. At the hearing reports and testimony were received from individuals who had evaluated and treated Denton, persons involved in his defense, and family members. Dr. Naomi McCormick, a clinical psychologist, had interviewed Denton on August 14, 2001 in connection with his claim for workers compensation. She reported that Denton had an overall IQ of 89 and was moderately to severely impaired in the areas of depression, cognitive deficits, and memory disorder compared to others his age who had not suffered brain injuries. Dr. McCormick also determined that Denton's language comprehension, repetition, constructional ability, and social judgment were normal.

Matthew Dunning, a speech pathologist at Covenant Medical Center where Denton attended outpatient cognitive and learning therapy, reported that an Information Processing Assessment Geriatric test indicated that Denton's overall information processing abilities remained excellent, but slightly delayed. Dunning discharged Denton from speech therapy in mid 2002 due to his substantial progress. Steven Anderson, a neuropsychologist at the University of Iowa Neurology Outpatient Clinic where Denton had been examined numerous times, indicated that his nonverbal planning was impaired and that he had mild deficits in verbal learning. Dr. Anderson conducted a reevaluation in November 2002, and noted that Denton's auditory attention and working memory remained "broadly preserved." Patricia McCollom, a registered nurse who met with Denton after trial for one hour at the request of defense counsel, stated that he had cognitive and behavioral deficits requiring a structured environment and believed that he would have been unable to participate in his defense at trial.

-4-

The psychiatric examination ordered by the district court was completed by Dr. Angela Weaver for the Bureau of Prisons (BOP). Dr. Weaver's initial report in June 2004 found that Denton exhibited memory problems, depression, shorter temper, and apathy manifested by little or no awareness of his cognitive abnormalities. Although Dr. Weaver stated that these factors could affect Denton's ability to assist in his defense, she also indicated that Denton's memory functioned properly for immediate, recent, and remote recall, and he did not have apparent visual, hearing or motor control difficulties. Dr. Weaver found that Denton was competent to be sentenced, but she did not reach an ultimate finding as to whether Denton had been competent at trial. Because of conflicting or missing information and her inability to speak with trial counsel Christopher Clausen, who had been deployed overseas, she was unable to give an opinion on the issue.

Dr. Weaver prepared a supplemental report in November 2004 that incorporated additional information provided by Clausen and Denton. Clausen stated that Denton had been active in assisting him before and during trial and was able to comprehend the proceedings. With this additional information, Dr. Weaver found Denton's memory problems were not severe or debilitating, that he would have had no trouble tracking information at trial even though he processed it slowly, and that he was competent at trial.

Attorney Clausen testified that Denton had understood the proceedings and testimony and had consulted with him regarding lines of questioning and overall defense strategy. Clausen knew of the brain injury but made a conscious decision not to raise the issue because Denton seemed to have a "good understanding of the elements of the offense charged, a good grasp of the facts alleged, a good recollection of his explanation of the events alleged as well as a good understanding of the court procedures." Clausen had also asked a physician to review Denton's medical records; the physician found nothing to support a claim of incompetence to stand trial.

After hearing the evidence the district court concluded that Denton had been "sufficiently able" to consult with Clausen "to a reasonable degree of rational understanding" prior to and during his trial. The district court further found that Denton had a rational and factual understanding of the proceedings against him, and determined Denton was competent at the time of trial and was competent to be sentenced.

The district court sentenced Denton on February 16, 2005. The court found his base offense level was 39, applied a two level enhancement under USSG § 2D1.1(b)(1) for possession of a firearm in connection with a drug offense, and enhanced his sentence another two levels under§ 3C1.1 for committing perjury at trial. The court denied Denton's requests for a four level reduction for minimal role under § 3B1.2(a) and a downward departure based on his age, health or mental capacity. Denton's total adjusted offense level of 43 combined with a criminal history category I resulted in an advisory guideline sentence of life imprisonment. After considering the § 3553(a) factors, the court sentenced Denton to life imprisonment.

## I.

Denton complains that the district court erred in denying his motion for recusal because a reasonable person would have doubts as to the court's impartiality because of its comments during trial and the scheduling of Denton's competency and sentencing hearings for the same day. Denton argues that the district court had personal knowledge of critical facts as displayed by its observations at trial and had already determined on the record that he was competent. Denton also complains that Dr. Weaver's report had improperly relied on the court's statements in its competency analysis.

A judge is required to recuse from "any proceeding in which his impartiality might reasonably be questioned" or if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the

proceeding." 28 U.S.C. § 455. The test in reviewing the judge's decision is "one of objective reasonableness," that is whether the district court's impartiality "might reasonably be questioned under the circumstances." Lunde v. Helms, 29 F.3d 367, 370 (8th Cir. 1994). A judge is presumed to be impartial, and "the party seeking disqualification bears the substantial burden of proving otherwise." Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003). We review the district court's decision to deny Denton's motion requesting recusal for abuse of discretion. Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 612 (8th Cir. 2003).

Denton seeks to establish bias or prejudice from in court conduct, which requires a showing that the judge had a disposition "so extreme as to display clear inability to render fair judgment." Liteky v. United States, 510 U.S. 540, 551 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555.

Denton has not made the necessary showing in this case. The district court's comments do not display "a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555. At the competency hearing the court received medical reports and heard testimony from Denton, his trial counsel Chris Clausen, his assistant Danielle Johnson, Dr. Weaver, and nurse McCollom. After hearing all of the evidence, the court issued a detailed and well reasoned order finding that Denton had been competent during trial. There is no indication that Dr. Weaver relied heavily upon the court's comments; indeed the record indicates that her report was influenced most heavily by her discussion with Denton's trial counsel. She had originally been unable to make a competency finding because she was unable to speak with Clausen and it was only after that conversation that she was able to submit her supplemental report.

Scheduling the sentencing hearing directly following the competency hearing does not indicate bias or prejudice. Prior to the hearing defense counsel indicated that he was concerned the court had already made up its mind as to Denton's competency. The court responded that "[i]f I had my mind made up, I wouldn't have let all of this time go by and all of the evaluations. But the evaluations were carried out because I don't consider myself an infallible observer." The court also indicated it would proceed to sentencing only "if appropriate," meaning only if Denton were found competent at the time of trial. Had Denton been found incompetent, the sentencing hearing would apparently not have taken place. Under all the circumstances the comments by the trial court did not call into question its impartiality. We conclude the district court did not abuse its discretion by denying the motion for recusal.

II.

Denton claims that he was not competent at the time of trial. Denton complains that his condition inhibited his ability to consult with counsel with a reasonable degree of rational understanding. He points to the testimony of Clausen's assistant, Danielle Johnson, who reported that Denton had trouble comprehending information and understood it better if it was in writing so that he could later review it. Denton also contends that Dr. Weaver's initial report and McCollom's report demonstrate that he was not competent during trial. Finally, he relies on affidavits from family members describing his mental limitations as manifested in daily life.

Determining whether a defendant is competent to stand trial is committed to the discretion of the district court. Absent a contrary indication, federal judges are entitled to presume a defendant is competent. The burden rests with the defendant to demonstrate that he was not competent to stand trial, United States v. Jiminez-Villasenor, 270 F.3d 554, 559 (8th Cir. 2001), and we review the district court's determination of competency for clear error. Vogt v. United States, 88 F.3d 587, 591 (8th Cir. 1996).

A defendant will be found competent if he is able "to consult with his lawyer with a reasonable degree of rational understanding and [has] a rational as well as factual understanding of the proceedings against him." United States v. Robinson, 253 F.3d 1065, 1067 (8th Cir. 2001) (internal quotations and citations omitted). The district court may consider "numerous factors, including expert medical opinions and the court's observation of the defendant's demeanor" at trial. Id. at 1067. Here, the court observed Denton interact with his attorney and testify on his own behalf, then commented that it "saw nothing whatsoever to suggest that he was having difficulty with the questioning.... He responded appropriately. He gave considerable detail." Dr. Weaver's final report, which was based on interaction with Denton and conversations with his family and trial counsel, concluded that his memory problems were not severe and that he would have no difficulty tracking information at trial. This finding paralleled the earlier finding of Dr. Anderson who determined that Denton's auditory attention and working memory remained "broadly preserved."

Trial counsel's opinion should receive significant weight since "[c]ounsel, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings...." Balfour v. Haws, 892 F.2d 556, 561 (7th Cir. 1989) (internal quotations omitted); see also Watts v. Singletary, 87 F.3d 1282, 1288 (11th Cir. 1996) ("Because legal competency is primarily a function of defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect."). Clausen testified that after having reviewed Denton's medical file he could find no legal basis to challenge Denton's competency to stand trial and that Denton was active in his defense and understood the proceedings against him.

Denton's reliance on the testimony of Johnson and the reports of Dr. Weaver and McCollom is misplaced. Johnson has no legal training and lacks the knowledge to evaluate the legal competency of Denton; she admitted that she attended "very few" meetings between Clausen and Denton, that most of her phone contact with Denton was in transferring his calls to Clausen, and that she was unaware of any

instance in which Denton had trouble understanding information she gave him. Dr. Weaver's initial report indicated only that she was unable to make a final determination as to Denton's competency at trial because she had been unable to speak with Clausen; after speaking with Clausen Dr. Weaver was confident that Denton was competent during trial. Finally, McCollom's own report displays Denton's lucidness when it recounts how he lied to inmates to avoid telling them he had been a police officer; her finding that Denton would have been unable to participate actively in his defense because his condition is chronic is conclusory and not substantiated by the medical evidence.

The findings of various medical professionals, the observations of Denton's trial counsel, and those of the judge demonstrate that the district court did not commit clear error. We affirm its competency finding.

III.

Denton complains that the district court erred in calculating the proper guideline range and challenges the overall sentence as unreasonable. He argues that the district court improperly determined the guideline range by adding two levels for weapon possession and another two levels for obstruction of justice while denying a downward role adjustment. Denton also argues that the sentence was unreasonable in light of his physical and mental condition.

The government first argues that we lack jurisdiction to review Denton's sentence under 18 U.S.C. § 3742(a)(1) because it was within the advisory guideline range and was properly calculated. This overlooks the teaching of United States v.Booker, 125 S. Ct. 738 (2005), which preserved the guidelines as advisory only and replaced the restrictive de novo standard of appellate review. Booker, 125 S. Ct. at 756-57. While a guideline sentence is presumptively reasonable, a sentencing court must go further in its analysis, for it must consider the factors in section 3553(a) before imposing sentence. Id. at 764-65; United States v. Red Elk, 426 F.3d 948, 951

(8th Cir. 2005). The final sentence is subject to reasonableness review, Booker, 125 S. Ct. at 765, whether it is within or outside the advisory guideline range. United States v. Mickelson, No.05-2324, slip op. at 9 (8th Cir. January 6, 2006) ("appellate review for sentences both within or outside the guidelines fits within what Congress would have intended in light of the [Supreme] Court's constitutional holding [in Booker]") (internal citation omitted); see also United States v. Frokjer, 415 F.3d 865, 875 n.3 (8th Cir. 2005) (an unreasonable sentence within the guideline range "would be imposed 'in violation of law' within the meaning of § 3742(a)"). The jurisdiction argument advanced by counsel for appellee would effectively "restore the rigidity in sentencing" that Booker held to violate the Sixth Amendment. See Mickelson, slip op. at 8.

We start by considering whether the district court properly calculated the guideline range, then whether it erred in any departure decision, and then whether the sentence imposed was reasonable. United States v. Haack, 403 F.3d 997 (8th Cir. 2005). The district court applied a two level enhancement under § 2.D1.1(b)(1) because Denton possessed a firearm in connection with his offense. Denton challenges this enhancement, arguing that the government did not prove that his gun was connected to the criminal activity. United States v. Harris, 310 F.3d 1105, 1112 (8th Cir. 2002). We will only reverse the district court's finding if it was clearly erroneous. United States v. Perez-Guerrero, 334 F.3d 778, 783 (8th Cir. 2003). During trial King testified that he saw Denton pull a gun from his ankle holster at the Hill and show it to members of the Click, and Denton admitted that he had access to a weapon that looked like the one described by King. Denton's challenge essentially goes to the credibility of King, and issues of credibility are within the discretion of the district court and "virtually unassailable on appeal." United States v. Luna, 265 F.3d 649, 652 (8th Cir. 2001). We conclude that the district court did not err by applying the weapon enhancement.

The district court also found that Denton committed perjury while testifying at trial and applied a two level enhancement for obstruction of justice under § 3C1.1(A).

-11-

Denton complains that the district court made no specific finding as to which part of his testimony constituted perjury and urges that inconsistencies in his testimony resulted from confusion, mistake, and faulty memory due to his brain injury. The government must prove the facts necessary to support the district court's findings by a preponderance of the evidence, United States v. Flores, 362 F.3d 1030, 1037 (8th Cir. 2004), and we review the district court's determinations for clear error. United States v. Molina, 172 F.3d 1048, 1058 (8th Cir. 1999).

A sentencing enhancement for obstruction of justice may be based on the experienced trial judge's finding that the defendant lied to the jury. United States v. Ziesman, 409 F.3d 941, 956 (8th Cir. 2005); United States v. Aguilar-Portillo, 334 F.3d 744, 749 (8th Cir. 2003). While it may be preferable for the district court to specify each element of perjury, we give great deference to the district court's decision. United States v. Nichols, 416 F.3d 811, 821 (8th Cir. 2005). Here, Denton's testimony directly contradicted the testimony of King and other members of the Click who described his deep involvement in the conspiracy, as well as Detective Navarro's testimony regarding the narcotics found in the abandoned rental car and his interview of Denton after his arrest. The district court did not err in applying an obstruction of justice enhancement.

Denton argues that he is entitled to a mitigating role adjustment because of his minimal or at most minor role in the conspiracy. The guidelines permit a mitigating role reduction if the defendant was "a minimal participant" and a two level reduction if he was a "minor participant." USSG § 3B1.2(a)-(b). Denton bears the burden of proving that he is entitled to a mitigating role adjustment, United States v. Hagan, 412 F.3d 887, 893 (8th Cir. 2005), and we review the district court's decision to deny the adjustment for clear error. United States v. Johnson, 408 F.3d 535, 538 (8th Cir. 2005). A defendant is eligible for a minimal participant reduction if he is "plainly among the least culpable of those involved in the conduct of a group" and lacks knowledge of "the scope and structure of the enterprise and of the activities of others." § 3B1.2, cmt. 4. A minor participant reduction may be available if he "is less

-12-

culpable than most other participants, but [his] role could not be described as minimal." USSG § 3B1.2, cmt. 5. A less culpable defendant is not entitled to reduction if he was "deeply involved" in the offense, however. Johnson, 408 F.3d at 538. "To determine whether a reduction is appropriate, the court compares the acts of each participant in relation to the relevant conduct for which the participant is held accountable and measures each participant's individual acts and relative culpability against the elements of the offense." Johnson, 408 F.3d at 538-39.

The record demonstrates that Denton was deeply involved in the conspiracy and is not entitled to a mitigating role adjustment. Denton cannot be considered a minimal participant since he had knowledge of the scope and structure of the conspiracy and observed the activities of others in the conspiracy. Likewise Denton is not a minor participant because his acts do not demonstrate less culpability than the other individuals involved in the conspiracy, bur rather show that he was an active and useful part of the conspiracy. He was involved in transportation of drugs from California to Iowa, he used his police background to protect the conspiracy, he sold drugs from the Hill, and provided protection for the drug distribution with his surveillance activities and weapon. The district court did not err in denying Denton's request for a mitigating role adjustment.

Denton argues that the district court's sentence is unreasonable and inconsistent with the section 3553(a) factors. Specifically, Denton argues that the sentence does not fit the nature and circumstances of his offense, his lack of criminal history, and the goal of deterrence, while at the same time being cruel given his age and physical condition. The district court must consider the section 3553(a) factors in deciding on the sentence, and it may depart downward if the defendant suffers from an extraordinary physical impairment. § 5H1.4. The district court denied Denton's request for a downward departure and determined that Denton did not suffer from any impairment at the time of the offense, that his age and physical condition did not place him at increased risk of injury or death if imprisoned, and that no showing was made that his life span would be reduced or that the BOP would be unable to care for

him. We review the district court's finding that Denton did not have an extraordinary physical impairment for clear error, Robinson, 409 F.3d at 981, and his sentence for an abuse of discretion. Haack, 403 F.3d at 1003.

To warrant a downward departure based on physical impairment Denton must show (1) that his physical condition is such that imprisonment would impose more than the normal hardship; (2) imprisonment would subject him to more than normal inconvenience or danger; and (3) his physical condition has substantial effects on his ability to function. United States v. Johnson, 318 F.3d 821, 826 (8th Cir. 2003). The district court addressed each of these grounds in the sentencing hearing and determined that there was no evidence that Denton would suffer more than any other inmate. Denton submitted no evidence that would indicate that any of these three factors were met and made no complaint during his incarceration for more than one year prior to sentencing. We find the district court did not commit clear error in denying a downward departure based on physical condition.

We also find that the district court did not abuse its discretion in sentencing Denton to life imprisonment. The district court considered all of the section 3553(a) factors, and Denton has not demonstrated that the district court overlooked any significant factor, gave improper weight to any factor, or made a clear error in judgment. Haack, 403 F.3d at 1004. We conclude that the sentence was not unreasonable under the circumstances.

IV.

The court acted in an impartial manner and was not required to recuse itself from either the competency or sentencing hearing. The district court properly determined, based on the medical evidence and testimony, that Denton was competent at trial and competent to be sentenced. Finally, the district court did not err in calculating or applying the advisory guidelines, and it considered the § 3553(a)

factors before imposing a reasonable sentence.  The judgment of the district court is therefore affirmed.

_____