# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1567

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Ramon Gomez Godinez, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

Submitted: January 10, 2007
Filed: February 2, 2007

_____

Before MURPHY, HANSEN, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ramon Gomez Godinez pled guilty to conspiring to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine within 1000 feet of a public playground. The district court[1] sentenced him within the advisory guideline range to 252 months. On appeal Gomez Godinez raises a variety of sentencing issues. We affirm.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

In July 2002 officers from the Tri-State Drug Task Force began investigating Juan Garcia for distribution of methamphetamine. On July 31, 2002 a confidential informant notified police that they might find Garcia at the trailer home of Gomez Godinez in Sioux City, Nebraska. When officers went to the trailer, they saw Marthel Valencia Birrue and Pablo Blanco Lopez departing in a car. Police stopped them and found three pounds of methamphetamine. Based on this information, police obtained a warrant to search Gomez Godinez's trailer and found 789.1 grams of methamphetamine, drug notes, and other drug paraphernalia.

Police officers debriefed Juan Garcia about the case, and he told them that Gomez Godinez was the "boss." Police also connected Garcia to Antonio Valadez, who stated during questioning that Gomez Godinez was the largest drug dealer he knew. Valadez said that he had received three pounds of methamphetamine from Gomez Godinez in the summer of 2000 and another pound in 2002. Valencia Birrue and Blanco Lopez told the officers that Gomez Godinez had transported methamphetamine from Redwood City, California to Iowa on multiple occasions. Blanco Lopez also told them that Gomez Godinez brought five to six pounds of methamphetamine from California to Iowa every other month and that he had observed him with this amount on three occasions.

Gomez Godinez was indicted on November 20, 2003 for conspiracy to distribute 500 grams or more of methamphetamine within 1000 feet of a public playground, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 860(a). He was not arrested until February 27, 2004, and he pled guilty on September 15, 2004. In his plea agreement he stipulated that he had participated in distributing over 15,000 grams of methamphetamine during the conspiracy and that he had distributed the drugs within 1000 feet of a public playground.

A presentence report prepared before Gomez Godinez's sentencing calculated a base offense level of 39 based on the amount of drugs and the fact that the offense

occurred within a protected area. The report referenced the statements made by Garcia, Valadez, and Blanco Lopez. Gomez Godinez did not file any objection to the presence report. Three days before the sentencing hearing he submitted a memorandum requesting a minor role reduction and consideration for his lack of guidance as a youth and the stress faced by his family. At the hearing the district court granted a three level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a),(b), resulting in an adjusted offense level of 36. Combined with his criminal history category of II, this yielded an advisory guideline range of 210 to 262 months. Because the government filed a prior felony drug offense enhancement under 21 U.S.C. § 851 the statutory mandatory minimum sentence was 240 months. The government chose not to move for a departure for substantial assistance under U.S.S.G. § 5K1.1. The district court sentenced Gomez Godinez to 252 months.

On appeal Gomez Godinez argues that the court should have given him a two level reduction since he played a minor role in the conspiracy. He also contends that the court should have granted a two level departure for his lack of guidance as a youth and his life circumstances, or based a variance under 18 U.S.C. § 3553(a) on these circumstances. Finally, he claims that the government should have filed a motion to reduce his sentence because of his substantial cooperation and that the district court erred by refusing to hold a hearing on this issue.

Gomez Godinez first argues that the court erred by failing to award him a two level reduction under U.S.S.G. § 3B1.2(b) for his minor role. He claims that he was not the manufacturer or the main distributor of the methamphetamine and that Juan Garcia offered no facts to support the assertion that he was the "boss" of the operation. He also claims the district court erred in failing to compare his acts and relative culpability to those of the other participants, citing United States v. Johnson, 408 F.3d 535, 538-39 (8th Cir. 2005). The government responds that the presentence report, which was not contested by Gomez Godinez, stated that he was not just a transporter, but a major drug dealer who routinely distributed large quantities of

methamphetamine. Moreover, the government points out that the district court found there was enough evidence to support a finding that he played an aggravating role.

We review the district court's determination of whether a defendant qualifies for a mitigating role reduction for clear error. United States v. Johnson, 358 F.3d 1016, 1017 (8th Cir. 2004). The defendant has the burden of proving he played a minor role. United States v. Surratt, 172 F.3d 559, 567 (8th Cir. 1999). A reduction may be appropriate if the defendant is "less culpable than most other participants," U.S.S.G. § 3B1.2, but is unwarranted if the defendant was "deeply involved" in the offense. Johnson, 408 F.3d at 538-39. The appropriate test for whether a reduction is appropriate is to compare the acts of the defendant "in relation to the relevant conduct for which the participant is held accountable" and measure "each participant's individual acts and relative culpability against the elements of the offense." Id.

Here, the record demonstrates that Gomez Godinez was deeply involved in the conspiracy and that his role was essential to the operation. He transported drugs across state lines, stored them at his residence, and sold them. See United States v. O'Dell, 204 F.3d 829, 837-38 (8th Cir. 2000) (defendant was deeply involved in a conspiracy when he stored, transported, and helped cut methamphetamine). The defendant did not contest the facts outlined in the presentence report, including the characterization that he was the "boss" of the conspiracy, which signifies that his relative culpability and involvement in the offense could not have been significantly less than the other coconspirators. It was not erroneous for the district court to rely on these facts since he did not contest them. We conclude the district court did not clearly err in finding that Gomez Godinez was not a minor participant nor in denying a reduction on this ground.

Gomez Godinez next argues that the court erred by not granting him a two level downward departure under U.S.S.G. § 5H1.12 because he lacked guidance as a youth and because his life circumstances put this case outside of the heartland. He points

out that he lost his father at the age of twelve, was unable to attend school, and remained illiterate until late adolescence. He also suggests that he was coerced to participate in criminal activities to support his family because with no education and a drug addiction he lacked marketable skills. He argues that the same life circumstances would justify a variance under the factors outlined in 18 U.S.C. § 3553(a).

Under U.S.S.G. § 5H1.12, lack of guidance as a youth is "not relevant to determining whether a departure is warranted." Moreover, a district court's decision not to depart is unreviewable as long as the court recognized its authority to depart. United States v. Washington, 467 F.3d 1122, 1124 (8th Cir. 2006). Here, the district court expressly stated at the sentencing hearing that Gomez Godinez's circumstances were not outside the heartland and declined to depart on this basis.

The district court also analyzed the reasonableness of the sentence according to the 18 U.S.C. § 3553(a) factors and determined that a sentence within the advisory range was appropriate, pointing to the facts that Gomez Godinez had previously been convicted of a drug distribution crime and had not reformed and that his life circumstances were not unusual. The district court did not abuse its discretion by not granting a variance based on Gomez Godinez's life circumstances and lack of guidance as a youth. We conclude that his sentence was not unreasonable.

Gomez Godinez finally argues that the government acted in bad faith by refusing to move for a substantial assistance departure pursuant to U.S.S.G. § 5K1.1 and that the court erred by failing to grant a hearing on the issue. He contends he fully provided substantial assistance, that the prosecution indicated it would continue to use his assistance in the future, and that the government withheld the motion because it did not want to provide Gomez Godinez the benefit of his bargain in the plea agreement. The government responded that these were only bare assertions which did not meet the requisite substantial threshold showing that would require the court

to hold an evidentiary hearing, that the information he provided had not been used to indict anyone, and that he was not truthful when questioned.

A district court has authority to review a prosecutor's choice not to move for a substantial assistance departure if the court finds the refusal was based on an unconstitutional motive or was not "rationally related to any legitimate Government end." Wade v. United States, 504 U.S. 181, 185-86 (1992); see also United States v. Marks, 244 F.3d 971, 975 (8th Cir. 2001). The government does not have a duty to move to depart on this basis unless the plea agreement created one. Wade, 504 U.S. at 185. If the plea agreement granted the government discretion to choose whether to make a departure motion, the defendant must make a "substantial threshold showing of prosecutorial discrimination or irrational conduct" in order to warrant an evidentiary hearing. United States v. Amezcua, 276 F.3d 445, 447 (8th Cir. 2002).

Here, the plea agreement granted the prosecution discretion to decide whether to move for a sentence reduction based upon substantial assistance. Under this agreement, the government had the authority to determine if the quality and usefulness of Gomez Godinez's assistance warranted a departure motion. See United States v. McClure, 338 F.3d 847, 851 (8th Cir. 2003). Gomez Godinez does not contest the government's assertion that the information he provided had not been used to indict anyone or that the government was concerned about his truthfulness. Moreover, he fails to identify any unconstitutional motive affecting the prosecution's decision or to assert that the government's refusal was "not rationally related to any legitimate Government end." See Marks, 244 F.3d at 975 (internal marks omitted). A defendant's bare assertions that he provided substantial assistance are insufficient to require a hearing on the matter without more specific allegations of improper motive. See id. at 975. The prosecution had discretion spelled out in the plea agreement to refrain from making a departure motion based on substantial assistance,

and we conclude that the district court did not err by not holding an evidentiary hearing on the issue.

For the foregoing reasons we affirm the judgment of the district court.

_____